# Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

RUSORO MINING LIMITED,

      Plaintiff,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

      Defendant.

Case No. 21-mc-00481-LPS

**[PROPOSED] DECLARATION OF CHARLENE C. SUN**

I, Charlene C. Sun, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.      I am an attorney at the law firm of DLA Piper LLP (US), counsel for Plaintiff and judgment creditor Rusoro Mining Limited ("Rusoro") in the above-captioned action.

2.      I make this supplemental declaration in support of Plaintiff's Motion for an Order Authorizing the Issuance of a Writ of Attachment *Fieri Facias* and a Finding That Reasonable Time Has Passed to Execute Judgment Pursuant to 28 U.S.C. § 1610(c).

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the decision issued by the Paris Court of Appeal, dated June 7, 2022, along with a certified English translation of the same, in which the Paris Court of Appeal dismissed a renewed attempt by the Bolivarian Republic of Venezuela ("Venezuela") to annul the Award.

Dated: New York, New York
      July 11, 2022

_____
Charlene C. Sun

# Exhibit 1

FRENCH REPUBLIC
IN THE NAME OF THE FRENCH PEOPLE

Enforceable    copies
issued to the parties on
:

**PARIS COURT OF APPEAL**

**International Commercial Chamber
DIVISION 5 - CHAMBER 16**

**RULING OF JUNE 7, 2022**

*ON REFERRAL AFTER CASSATION*

(No. **61** /2022, 12 pages)

Docket registration No.: **Case Registration No. 21/10427 - Portalis No.
35L7-V-B7F-CDZN6**

Decisions referred to the Court:
Referral after cassation handed down on March 31, 2021
International award handed down in Paris on April 22, 2016 under the auspices of the
ICSID

<u>**PLAINTIFF IN APPEAL:**</u>

**BOLIVARIAN REPUBLIC OF VENEZUELA**
Av. Los Illustres, cruce con calle Francisco Lazo Martí,
Procuraduría Gen. de la República, piso 8, Urb. Santa Mónica 1040
CARACAS (VENEZUELA)
represented by the Attorney General of the Republic, Procuraduría General de la República

*represented and assisted by Maître Luca DE MARIA of the law firm PELLERIN - DE
MARIA-GUERRE, attorney at the PARIS bar, locker No.: L0018*

<u>**DEFENDANT IN APPEAL:**</u>

**RUSORO MINING LIMITED Company**
With its registered head office at: 3200-650 West Georgia Street**,** VANCOUVER**,** British
Columbia (V6B 4P7) (CANADA)
represented by its legal representatives,

*Represented by Maître Matthieu BOCCON GIBOD of the law firm LEXAVOUE
PARIS-VERSAILLES, attorney at the PARIS bar, locker No.: C2477
represented by Maître Christophe SERAGLINI of the law firm FRESHFIELDS
BRUCKHAUS DERINGER LLP, attorney at the PARIS bar, locker No.: J007*

<u>**COMPOSITION OF THE COURT:**</u>
        The case was debated on April 19, 2022 in a public hearing before the Court
composed of:
                Mr. François ANCEL, Presiding Judge
                Ms. Fabienne SCHALLER, Judge
                Ms. Laure ALDEBERT, Judge
        who deliberated upon it. A report was presented at the hearing by Mr. François
ANCEL under the conditions provided for by Article 804 of the Code of Civil Procedure.

**Court Clerk** during the proceedings**:** Ms. Najma EL FARISSI

**DECISION:**

   - in the presence of the parties

   - by providing the ruling to the Court registry, the parties having been informed accordingly beforehand under the conditions provided for in the second paragraph of Article 450 of the Code of Civil Procedure.

   - signed by François ANCEL, Presiding Judge and by Najma EL FARISSI, Court Clerk, to whom the minutes of the decision was handed by the signing magistrate.


## I/ FACTS AND PROCEEDINGS

1 - **Rusoro Mining Ltd** (hereinafter the company Rusoro) is a company incorporated under Canadian law, whose head office is located in Vancouver, operating in the field of acquisition, exploration and exploitation of gold mines.

2 - Between 2006 and 2008, Rusoro acquired a majority stake in several Venezuelan companies that held mining concessions and contracts for the exploitation, development and mining of gold and other minerals in the south-eastern part of Bolivar State in Venezuela.

3 - During the course of 2009 and 2010, the Bolivarian Republic of Venezuela adopted several measures to restrict the exportation of gold, as well as rules relating to foreign exchange control.

4 - On September 16, 2011, the Venezuelan Government adopted a nationalization decree that provided for the transfer of gold mining activities to mixed companies with a majority public shareholding.

5 - At the end of the negotiation period and in the absence of an agreement on the terms of transfer, the mining rights of Rusoro and its subsidiaries were automatically extinguished on March 15, 2012. Rusoro withdrew from the exploitation areas and the Venezuelan Republic took possession thereof in April 2012.

6 - On July 17, 2012, Rusoro filed an application for arbitration at the International Centre for Settlement of Investment Disputes (ICSID) on the basis of the bilateral investment treaty signed between Canada and the Bolivarian Republic of Venezuela (BIT) on July 1, 1996.

7 - In an award handed down in Paris on August 22, 2016 in ICSID Case No. ARB (AF)/12/5 between the Bolivarian Republic of Venezuela and Rusoro, the arbitral tribunal, after noting the statute of limitations on the claims based on the measures taken by the Venezuelan State in 2009, held that the Venezuelan State had on the hand violated Article VII of the BIT by expropriating Rusoro's investment without compensation, and on the other hand, paragraph 6 of the Annex to the BIT by virtue of the State's decisions in 2010.

8 - On October 19, 2016, the Bolivarian Republic of Venezuela lodged an appeal for annulment against this arbitral award.

9 - On 16 March 2017, the latter was granted exequatur by an order of the Pre-Trial Counselor.

10 - On January 29, 2019, the Paris Court of Appeal annulled the arbitral award but only insofar as it ordered the Bolivarian Republic of Venezuela to pay Rusoro the sum of US$966,500,000 for the expropriation without compensation of its investment on the grounds that the contracting parties had made their offer of arbitration subject to compliance with the condition set out in Article XII (3)(d) according to which an arbitral tribunal constituted under the BIT does not have jurisdiction to consider harmful facts of which the investor knew or ought to have known for more than three years at the date of referral.

11 - On March 31, 2021, Rusoro lodged an appeal on cassation against this decision.

12 - In a decision of March 31, 2021, the Court of Cassation quashed and annulled all provisions of the Appeal Court decision, arguing that in so ruling, whereas the limitation period provided for in Article XII (3)(d) of the Agreement does not constitute a plea of lack of jurisdiction but relates to the admissibility of claims, which does not fall within the scope of Article 1520(1), of the Code of Civil Procedure, the Court of Appeal had violated the above text.

13 - The case was referred back to a differently composed Paris Court of Appeal.

14 - The Bolivarian Republic of Venezuela then referred the matter to the Paris Court of Appeal on June 1, 2021.

15 - The conclusion was pronounced on April 12, 2022.

## II/ CLAIMS

**16- According to its last submissions notified electronically on April 11, 2022, the Bolivarian Republic of Venezuela requested the court, in particular under Articles 1520 and 700 of the Code of Civil Procedure, to:**

- **ANNUL** the arbitral award handed down in Paris on August 22, 2016 by Professor Juan Fernández-Armesto, Professor Francisco Orrego Vicuña and Judge Bruno Simma,

- **ORDER** Rusoro Mining Ltd to pay the sum of 150,000 euro in application of Article 700 of the Code of Civil Procedure as well as all costs.

**17 - According to its last submissions notified electronically on April 8, 2022, Rusoro requested the court, in particular under articles 122, 125, 1466, 1504 and following, 699 and 700 of the Code of Civil Procedure to:**

- **FIND** the plea relating to lack of jurisdiction *ratione temporis* raised by the Bolivarian Republic of Venezuela in support of its action to set aside the arbitral award handed down on August 16 (sic), 2016 in Case ARB(AF)/12/5, inadmissible;

- **FIND** the plea relating to the alleged failure to comply with the requirement of a prior attempt at an amicable settlement of the dispute raised by the Bolivarian Republic of Venezuela in support of its action to set aside the arbitral award handed down on August 16, 2016 in Case ARB(AF)/12/5 inadmissible;

- **Find** all the grounds raised by the Bolivarian Republic of Venezuela in support of its appeal to set aside the arbitral award handed down on August 16, 2016, in Case ARB(AF)/12/5 to be unfounded.

Consequently:

- **DISMISS** the appeal for annulment of the arbitral award handed down on August 16, 2016, in Case ARB(AF)/12/5 filed by the Bolivarian Republic of Venezuela;

- **GRANT** exequatur to the arbitral award handed down on August 16, 2016 in case ARB(AF)/12/5 pursuant to Article 1527 paragraph 2 of the Code of Civil Procedure, and in so doing confirm the exequatur order of the Pre-Trial Counselor of March 16, 2017;

- **ORDER** the Bolivarian Republic of Venezuela to pay the sum of 350,000 euro to Rusoro in application of Article 700 of the Code of Civil Procedure; and

- **ORDER** the Bolivarian Republic of Venezuela to pay all costs in application of Article 699 of the Code of Civil Procedure.

In any case:

- **DISMISS** any other, more extensive or contrary claim by the Bolivarian Republic of Venezuela, including the claim under Article 700 of the Code of Civil Procedure.

## III/ GROUNDS FOR THE DECISION

### *Regarding the plea of the arbitral tribunal's lack of jurisdiction (Article 1520(1) of the Civil Procedure Code);*

**18 - The Bolivarian Republic of Venezuela** firstly argues that the determination of the jurisdiction of the Arbitral Tribunal presupposes fulfilment of the conditions set out in Article XII of the BIT and that the fulfilment of the condition set out in paragraph (3)(d) of that Article, included in the offer to arbitrate and interpreted in accordance with the international custom expressed in the Vienna Convention on the Law of Treaties of May 23, 1969, poses a question of jurisdiction within the meaning of Article 1520(1) of the Code of Civil Procedure.

19 - It points out in this regard that this clause of the BIT expresses the arbitration offer made by the BIT signatory States, Canada on the one hand, and Venezuela on the other, for the benefit of the persons it envisages under the conditions specified therein, and that paragraph (5) of Article XII expressly states that: "Each of the contracting parties hereby gives its unconditional consent to the submission of a dispute to international arbitration in accordance with the provisions of this Article", so that the jurisdiction of the arbitrators approached under the BIT arises from the acceptance of the offer to arbitrate contained in Article XII, and the conditions set out in Article XII(3) for recourse to arbitration are thus part of the definition of the consent of the alleged investor to the offer to arbitrate.

20 - They state that according to Article XII(3) of the BIT, claims relating to a "breach" or damage suffered "by reason of" such breach are excluded from the jurisdiction of the Tribunal if more than three years have elapsed between the date on which the investor became aware or should have become aware of this breach and the date on which the dispute was submitted to arbitration, and the date of submission of the dispute to arbitration, and that in this case the Request for Arbitration was filed on July 17, 2012, so that all claims arising from a breach and injury of which Rusoro knew or should have known prior to July 17, 2009 should be excluded from the Tribunal's jurisdiction.

21 - They state that the sum of US$966,500,000 awarded to Rusoro was determined by the Tribunal on the basis of the market capitalization of that company as of February 28, 2008, or on the basis of the amount of the investment made by Rusoro between 2006 and 2008 for the acquisition of gold assets in Venezuela, even though the value of Rusoro's gold assets in Venezuela, as well as its market capitalization decreased significantly between 2006 and July 17, 2009, the date delimiting the *ratione temporis* scope of the Tribunal's jurisdiction (with a particularly sharp decline between February 28, 2008 and July 17, 2009).

22 - They argue that Rusoro knew of the decrease in the value of its assets and its capitalization well before July 17, 2009, and that any claim relating to the damage suffered by it as a result of this decrease is therefore excluded from the *ratione temporis* scope of the Tribunal's jurisdiction, so that the award is subject to annulment, insofar as the Tribunal ruled on damage of which Rusoro knew or should have known before July 17, 2009.

23 - They feel that under the guise of compensation, the arbitral tribunal ruled on measures of which it could not know about by awarding compensation for measures that occurred after the deadline of the Tribunal's jurisdiction under the BIT.

24 - The Bolivarian Republic of Venezuela then argues that the Arbitral Tribunal did not comply with the requirement of a prior attempt at an amicable settlement of the dispute.

25 - They argue that this claim is admissible because they did not waive it having challenged the jurisdiction of the arbitral tribunal and that this claim is a continuation of the challenge of jurisdiction.

26 - They are of the opinion that the wording of the first two paragraphs - a) and b) - of Article XII shows that the prerequisite of an amicable settlement is not only an obstacle to the investor's request but also an obstacle to the implementation of the arbitration mechanism itself and thus a prerequisite to recourse to arbitration.

27 - They state that the letter dated December 15, 2011, relied upon by Rusoro, does not justify an attempt at an amicable settlement because it does not meet the requirements of Article XII of the BIT, in particular because it does not contain all the details as to the nature or the amount of the possible damage alleged by this company. They are therefore of the opinion that this letter of December 15, 2011 did not give rise to any "dispute" within the meaning of Article XII(2) of the BIT and that it did not start the six-month period provided for in that provision for reaching an amicable settlement.

28 - Finally, the Bolivarian Republic of Venezuela points out that, in accordance with Article XII(1) of the BIT, jurisdiction is subject to a twofold requirement, on the one hand, of a "breach of the Treaty" and, on the other hand, of an injury suffered "as a result of such breach", so that the Tribunal has jurisdiction only to rule on an injury resulting from a "breach" of the BIT which the Tribunal must have found.

29 - It argues that the Arbitral Tribunal ruled without authority and outside the scope of its jurisdiction *ratione materiae* by awarding Rusoro compensation based on amounts dating back to several years before the expropriation, and therefore unrelated to the violation.

**30 - In response, Rusoro** argues that the arbitral tribunal has validly declared itself competent.

31 - It argues in the first place that the plea of lack of jurisdiction *ratione temporis* of the Arbitral Tribunal is inadmissible because it does not fall within any of the grounds for annulment of Article 1520 of the Code of Civil Procedure, since Article XII.3(d) of the

BIT, which requires the submission of arbitration claims within a period of three years from the date on which the investor became aware, or should have become aware, of the breach and of the damage suffered, setting a limitation period.

32 - It points out that the fact that the condition at issue was instituted by a bilateral investment treaty (rather than in an arbitration clause in a commercial contract) has no bearing on its characterization and that the systematic assimilation of everything provided for in bilateral investment treaties as relating to the consent of States, and therefore to jurisdiction, is indicative of confusion about the concept of consent.

33 - It argues that this claim based on the alleged lack of jurisdiction *ratione temporis* of the Arbitral Tribunal is in any case unfounded and conceals a request for review on the merits.

34 - Secondly, Rusoro argues that the claim based on the alleged failure to comply with the condition relating to a prior attempt to settle the dispute amicably is inadmissible and unfounded. It is of the opinion that this does not constitute a grievance likely to give rise to the annulment of the arbitral award according to Article 1520(1), since it does not concern the jurisdiction of the arbitral tribunal but relates to the admissibility of the request, it being noted that in this case, the BIT does not provide for a true preliminary conciliation procedure, but merely stipulates that a period of six months must elapse between the notification of a dispute by the investor and the request for arbitration.

35 - It adds that Venezuela must be deemed to have waived the prior attempt at an amicable settlement of the dispute on the basis of Article 1466 of the CPC, having failed to invoke this irregularity before the arbitral tribunal.

36 - It maintains that, in any event, this claim is unfounded since it has fulfilled the requirements of the BIT to notify the Bolivarian Republic of Venezuela of the existence of a dispute within the meaning of Article XII of the BIT.

37 - Finally, it claims that the plea relating to the lack of jurisdiction *ratione materiae* is unfounded and conceals an application for review on the merits. Rusoro has submitted a dispute to the tribunal arising from violations of the treaty that caused it harm. It is of the opinion that the Arbitral Tribunal has jurisdiction to hear any claim by the investor according to which a breach of the Treaty has caused it injury and that, confirming that the Tribunal has jurisdiction only to rule on harm resulting from a breach of the BIT which the Tribunal must have found is, in the final analysis, to argue that the jurisdiction of the arbitrators presupposes that the breach and the injury resulting from it must be well founded.

## **WHEREUPON,**

38 - According to Article 1520(1) of the Code of Civil Procedure, an action for annulment is available if the court has wrongly declared itself competent or incompetent.

39 - It follows from this text that, without ruling on the names chosen by the arbitrators or proposed by the parties, the annulment judge reviews the decision of the arbitral tribunal regarding its competence, by seeking all the elements of law or fact allowing to assess the scope of the arbitration agreement. The same also applies when the arbitrators are referred on the basis of the provisions of a treaty.

40 - Where the arbitration agreement results from a bilateral investment treaty, the jurisdiction of the arbitral tribunal and the existence of its power to adjudicate depend on the treaty by which it is vested, so that the arbitral tribunal may hear a dispute only if it falls within the scope of the treaty and all its temporal, personal and material conditions of application relating to the existence of that power are met.

41 - However, unless expressly stipulated, these conditions may not deprive the arbitral tribunal, thus vested, of the exercise of its power to rule and, in particular, make the tribunal's jurisdiction dependent on the admissibility of the claims brought before it.

42- In this case, the arbitration offer of the Republic of Venezuela results from the agreement between the Government of Canada and the Government of the Republic of Venezuela concerning the promotion and protection of investments, concluded on July 1, 1996 and entered into force on January 28, 1998 (TBI), of which Article XII relating to the "Settlement of disputes between an investor and the host contracting party" provides for:

"*1) Wherever possible, any dispute between a contracting party and an investor of the other contracting party, resulting from the investor's claim that a measure taken by the first contracting party, or failure to take a measure, would violate this Agreement, and according to which also the investor or a company of which it is directly or indirectly the owner or majority shareholder, suffered a loss or harm as a result of this breach, is settled amicably by the parties concerned.*

*2) When a dispute is not settled amicably within six months of the time it arises, the investor may submit it to arbitration in accordance with paragraph 4). For the purposes of this paragraph, a dispute is considered to arise when the investor of a contracting party gives the other contracting party written notice that a measure taken by the second contracting party, or the failure of the latter to take a measure, would violate this Agreement, and according to which also the investor or a company of which it is directly or indirectly the owner or majority shareholder, suffered a loss or harm as a result of this breach.*

*3) The investor may submit a dispute to arbitration referred to in paragraph 1), in accordance with paragraph 4), only if the following conditions are met:*
*a) it consents in writing to arbitration;*
*b) it waives its right to initiate other proceedings before a judicial or administrative court against the contracting party in question or within the framework of a dispute resolution procedure, or to complete them, in relation to the measure which, according to it, would violate this Agreement;*
*c) In the event that the dispute may involve tax aspects, the conditions provided for in paragraph 14) of this Article are respected;*
*d) three years or less have elapsed since the date on which the investor became aware or should have become aware for the first time of the alleged violation as well as of the loss or harm that it suffered.*

*4) The investor in question may submit the dispute to arbitration [of the ICSID under the Washington Convention or under the additional Mechanism of the ICSID or in the absence of the parties' signature of the Washington Convention, by ad hoc arbitration according to the rules of the UNCITRAL (United Nations Commission on International Trade Law)].*

*5) Each of the contracting parties hereby gives its unconditional consent to the submission of a dispute to international arbitration in accordance with the provisions of this Article.*"

***Regarding the claim that the Arbitral Tribunal lacks jurisdiction with regard to the failure to comply with the condition laid down in Article XII(3)(d)***

43 - It does not follow from the terms of the above-mentioned arbitration offer or from the conditions for the application of the treaty that the requirement set out in Article XII(3)(d) can be interpreted as a condition for the application of the treaty and thus to a condition for the parties' consent to arbitration.

44 - In fact, this text does not provide that the arbitral tribunal constituted under the BIT "*does not have jurisdiction*" to consider harmful facts of which the investor knew or ought to have known for more than three years at the date of referral, but more precisely and specifically that "*<u>The investor may submit a dispute to arbitration under paragraph (1), in accordance with paragraph (4), only if</u>*" this deadline requirement is met (emphasis added by the Court), so that this text relates to the conditions for the exercise of the investor's right of action, and not to the jurisdiction as such of the arbitral tribunal.

45 - This interpretation is moreover supported by what is contained in paragraph (12) of Article XII, which again envisages the requirement concerning the investor's claim by stating that "*(a) Where an investor submits a claim based on this Article in respect of loss or damage to a company of which the investor is directly or indirectly the owner or majority shareholder, the following provisions shall apply: (...) (iii) <u>the investor may not submit a claim</u> where more than three years have elapsed since the company first became aware or should have become aware of the alleged violation and the loss or damage it has suffered*" (emphasis added by the Court).

46 - It is then clear from this text that this deadline condition which is similar to a limitation period does not condition the arbitral tribunal's ability to hear the dispute and thus its jurisdiction, but only the admissibility of certain claims before this duly vested tribunal.

47 - Finally, it should be noted that the temporal scope of application of the treaty on which the jurisdiction of the arbitral tribunal depends is not determined by this Article XII but by Article XVI(1) according to which "*This Agreement shall apply to any investment made by an investor of one of the contracting parties in the territory of the other contracting party before or after the entry into force of this Agreement. <u>It does not, however, confer a right to dispute settlement under Article XII and Article XIV with respect to actions taken and completed prior to the entry into force of this Agreement</u>*" (emphasis added by the Court).

48 - It is clear from these facts that the plea raised by the Bolivarian Republic of Venezuela, under the guise of the lack of jurisdiction of the arbitral tribunal, is in fact intended to challenge the decision of this arbitral tribunal as to the admissibility of the claim brought before it by Rusoro.

49 - It does not fall within the opening of an action for annulment as provided for by Article 1520 of the Code of Civil Procedure.

50 - It should therefore be dismissed.


***Regarding the claim based on the failure to comply with the prior amicable settlement;***

51 - It follows from Article XII(2) of the aforementioned TIB that "*When a dispute is not settled amicably within six months of the time it arises, the investor may submit it to arbitration in accordance with paragraph 4).*"

52 - However, the plea based on the alleged failure to implement the preliminary amicable settlement provided for in this article does not constitute a plea of lack of jurisdiction but a question relating to the admissibility of claims, which does not fall within the cases of initiation of the action for annulment listed by Article 1520 of the Code of Civil Procedure.

53 - This claim, which is inoperative, must therefore also be dismissed.

*Regarding the claim that the scope ratione materiae of the offer to arbitrate was not respected (Article XII(1));*

54 - While it is clear from paragraph (1) of Article XII above that the parties intended to submit to arbitration *"any dispute between a contracting party and an investor of the other contracting party arising out of a claim by the investor that a measure taken by the first contracting party ... violates this Agreement and that the investor ... has suffered loss or damage as a result of such violation"*, this clause does not make the jurisdiction of the arbitral tribunal subject to the prior recognition of the existence of a link between the alleged violation and the injury suffered.

55 - In fact, to require such a cumulative condition would be to make the court's jurisdiction dependent on the merits of the claim.

56 - This claim must therefore be dismissed.

57 - It follows from all of these facts that the plea of lack of jurisdiction of the arbitral tribunal must be dismissed.

**Regarding the claim of a violation by the arbitral tribunal of its duty (Article 1520(3) of the Code of Civil Procedure)**

**58 - The Bolivarian Republic of Venezuela** claims that the Arbitral Tribunal violated the mandate entrusted to it by using methods for the valuation of the loss that do not correspond to those agreed upon by Venezuela and Rusoro during the proceedings, namely, in accordance with Article VII of the BIT, the real value of the company considered as the fair market value.

59 - It specifies that it does not contest the calculation method used by the Court but condemns, on the basis of Article 1520(3) of the Code of Civil Procedure, the failure of the Court to respect the express agreement of the parties as to the standard of evaluation of the damage to be implemented.

60 - It adds that the arbitral tribunal failed in its duty by not respecting the agreement between the parties on the date to be taken into account in order to evaluate the compensation awarded to Rusoro.

**61 - In response, Rusoro** argues that, under the guise of an unfounded claim of a violation of Article 1520(3) of the Code of Civil Procedure, the plea seeks only a review of the merits of the Award, since Venezuela complains that the Arbitral Tribunal erred in its assessment of the loss, and not that it went beyond the scope of its duty as set by the parties.

62 - It believes that far from having violated its duty, the Arbitral Tribunal has on the contrary endeavored to seek the fair value of Rusoro's investments without going beyond the limits set by the parties. It states that while the parties agreed on the goal to be achieved under the terms of the Treaty - compensation equivalent to "fair market value" - there was no consensus on the means to achieve that goal - namely the valuation methods used by the parties.

63 - It adds that the arbitral tribunal complied with the agreement of the parties regarding the date of assessment of the loss relating to the expropriation by retaining the day of adoption of the Nationalization Decree, in other words, September 16, 2011, in order to respect the parties' choice.

**WHEREUPON,**

64 - According to Article 1520(3) of the Code of Civil Procedure, an action for annulment is available if the court has ruled without complying with the duty that was entrusted to it.

65 - The duty of the arbitrators, as defined by the arbitration agreement, is delimited primarily by the subject matter of the dispute as determined by the parties' claims, without focusing solely on the statement of issues in the terms of reference.

***Regarding the use of a damage assessment methodology not consistent with the parties' agreement;***

66 - It appears from paragraph 647 of the award that the tribunal found that the parties "*agree on two essential points*" which it therefore decided to apply "*without further discussion*" and in particular on the fact that "*the 'real value' referred to in Art. VII, is equivalent to the traditional concept of "fair market value", defined as "the price at which a willing buyer would purchase particular products and the price at which a willing seller would sell them, provided that neither party is under any form of duress and that both parties are in possession of valid information concerning all relevant circumstances relating to the purchase.*" It reiterated this statement in paragraph 751 of its award.

67 - The tribunal then held that in order to determine the fair market value of the investment, it had to determine "*the amount actually invested by Rusoro in Venezuela at historical prices and revalued on the basis of the growth of the gold producing companies; the book value of this investment, the market capitalization of Rusoro and the valuation made by the plaintiff's expert*" (§648).

68 - However, the tribunal then argued that "*The calculation that the Tribunal must make is purely hypothetical: in reality, in September 2011, no buyer with adequate information about the gold sector in Venezuela would have been willing to purchase a gold producing business in that country at a fair price*" (§ 752), which led it to argue that it must "*therefore calculate the fair market value of a business that no informed buyer would purchase at a fair price*" (§ 755).

69 - The award goes on to state in paragraph 756 that "*The BIT gives the Tribunal some guidance on how to deal with this seemingly intractable problem: it provides that the value of the expropriated asset should be established 'immediately prior to [the expropriation] or at the time the proposed expropriation is disclosed.' The purpose of this rule is to prevent the price of the asset from being affected by information emanating from the host State. The fair market value that the State must pay is the value that an uninformed, bona fide third party would pay if it were unaware of the policy put in place by the State prior to the expropriation (but after the investment) with regard to the expropriated company and its industry*".

70 - Based on these facts, the arbitral tribunal then decided to address "*the exact quantification of the real value of the Venezuelan company Rusoro*" (§ 761) and chose to do so by combining three weighted valuation methods, the "*Maximum Market Value Valuation*", the "*accounting valuation*" and the "*Adjusted Investment Valuation*" (§ 787 and following).

71 - It is clear from these statements that the arbitral tribunal did not deviate from the task entrusted to it, namely determining the "*fair market value*" of the company, but that it chose to rely on three combined valuation methods in order to determine this fair value.

72 - Thus, under the guise of a claim based on the failure of the arbitral tribunal to carry out its duty, the Bolivarian Republic of Venezuela in reality intends to contest the validity of the tribunal's decision by questioning the actual valuation of the fair market value of the company, which the tribunal carried out using the above-mentioned methods.

73 - This claim must therefore be dismissed.

***Regarding the failure to comply with the date of assessment of the loss relating to the expropriation;***

74 - In application of Article VII of the BIT on expropriation, "*[...] The amount of compensation must be based on the actual value of the investment or income affected by the expropriation immediately prior to the expropriation or at the time that the proposed expropriation is disclosed, whichever is earlier, and is payable from the date of expropriation, must bear interest at the usual commercial rate, must be paid promptly, and must be truly achievable and freely transferable.*"

75 - It appears from the award, particularly paragraph 647, that the arbitral tribunal felt, in accordance with the parties' agreement on this point, that "*the applicable valuation date is September 16, 2011, the day of the adoption of the Nationalization Decree*", adding that "*this consensus*" thus avoided "*addressing the thorny issue of the appropriate date for calculating the illegal expropriations.*"

76 - After applying the above three combined methods to value the company, Rusoro, the arbitral tribunal stated that "*applying the weighting factors to the three valuations yields a result of US$966.5 million. This is the tribunal's determination of the actual value of Rusoro's investment as of September 16, 2011*" (§ 790).

77 - It is clear from these facts that the tribunal cannot be reproached for having disregarded the agreement of the parties on the date of valuation of the expropriation, even though it may have taken into account parameters prior to that date.

78 - If, under the accounting valuation method, the court could take into account "the enterprise value of Rusoro", which, according to Bloomberg on "February 28, 2008", amounted to US$700.6 million (§ 711), in order to determine the value on the day of the expropriation, this fact was taken into account as a parameter in determining this value on the day of the expropriation, since the tribunal noted that this value "*then began to fall rapidly and this trend continued until the market capitalization collapsed to 106.8 million USD on August 5, 2011*" (§715).

79 - It was therefore by weighing all these factual elements, with the gold price as it was set less than a month before the expropriation (§ 658), that the tribunal quantified Rusoro's accounting valuation on the day of the expropriation, without prohibiting it from taking into account all useful parameters, including those prior to this day.

80 - In addition, if for the other valuations (the accounting valuation and the adjusted investment valuation), the Bolivarian Republic of Venezuela argues that the tribunal also relied on the value of Rusoro's business at dates prior to the expropriation between 2006 and 2008, it should be noted that this allegation is in fact lacking while in its paragraph 766, the tribunal states that the "*net book value of Rusoro's assets, as at September 30, 2011 (the last day of the quarter in which the expropriation took place), amounted to USD 908 million [the Accounting Valuation].*"

81 - Lastly, whereas the adjusted investment valuation method required taking into account the initial investments made by Rusoro, this element constituted a starting parameter to determine a value on the day of the valuation of the investments made in the past taking into account the price of gold, the court noted that Rusoro's initial investment (of US$774.3 million) was made at a time when gold prices were low, whereas the expropriation took place at a time when these prices "*had reached their maximum*" (§ 682).

82 - It is clear from these facts that the arbitral tribunal in no way disregarded the date of the assessment of the loss related to the expropriation and thus its duty.

83 - This claim must therefore also be dismissed.

84 - In view of all these facts, the action for annulment must be dismissed and in accordance with Articles 1524 and 1527 para. 2 of the Code of Civil Procedure, this dismissal confers exequatur on the arbitral award handed down on August 22, 2016 in Case ARB(AF)/12/5 without there being any need to rule on the request to confirm the exequatur order rendered by the Pre-Trial Counselor on March 16, 2017.

**Regarding fees and costs;**

85 - The Bolivarian Republic of Venezuela, the losing party should be ordered to pay the costs, which must be recovered in accordance with the provisions of Article 699 of the Code of Civil Procedure.

86 - In addition it must be ordered to pay compensation to Rusoro which had to incur irrecoverable costs in order to assert its rights pursuant to Article 700 of the Code of Civil Procedure, which it is fair to set at the sum of 150,000 euros.

## VI/ ORDER

For these reasons, the court:

1 - Dismisses the action for annulment of the award handed down in Paris on August 22, 2016 under the auspices of the ICSID (Case No. ARB(AF)/12/5);

2 - Orders the Bolivarian Republic of Venezuela to pay Rusoro Mining Limited the sum of 150,000 euros under Article 700 of the Code of Civil Procedure;

3 - Orders the Bolivarian Republic of Venezuela to pay the costs, which shall be recovered in accordance with Article 699 of the Code of Civil Procedure.

|                        |                          |
|:----------------------:|:------------------------:|
| **The Court Clerk**    | **The Presiding Judge**  |
|                        |                          |
| **Najma EL FARISSI**   | **François ANCEL**       |



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document **"7 June 2022 Decision of the Paris Court of Appeal"** is to the best of my knowledge and belief, a true and accurate translation from French into English.

Jacqueline Yorke

Sworn to before me this
June 20, 2022

Signature, Notary Public

ANDERS MIKAEL EKHOLM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EK6378373
Qualified in New York County
My Commission Expires 07-23-2022

Stamp, Notary Public

Copies exécutoires
délivrées aux parties le
:

# REPUBLIQUE FRANCAISE
## AU NOM DU PEUPLE FRANCAIS

### COUR D'APPEL DE PARIS

**Chambre commerciale internationale**
**PÔLE 5 - CHAMBRE 16**

**ARRET DU 07 JUIN 2022**

*SUR RENVOI APRÈS CASSATION*

(n° **61** /2022 , 12 pages)

Numéro d'inscription au répertoire général : **N° RG 21/10427 - N° Portalis 35L7-V-B7F-CDZN6**

Décisions déférées à la Cour :
Renvoi après cassation prononcé le 31 Mars 2021
Sentence internationale rendue à Paris le 22 Août 2016 sous l'égide du CIRDI

### DEMANDERESSE AU RECOURS :

**RÉPUBLIQUE BOLIVARIENNE DU VENEZUELA**
Av. Los Illustres, cruce con calle Francisco Lazo Martí,
Procuraduría Gen. de la República, piso 8, Urb. Santa Mónica 1040
CARACAS (VENEZUELA)
représentée par le Procurador General de la República, Procuraduría General de la República

*Représentée par Me Luca DE MARIA de la SELARL PELLERIN - DE MARIA - GUERRE, avocat postulant et plaidant du barreau de PARIS, toque : L0018*

### DÉFENDERESSE AU RECOURS :

**Société RUSORO MINING LIMITED**
Ayant son siège social : 3200-650 West Georgia Street**,** VANCOUVER**,** British Columbia (V6B 4P7) (CANADA)
prise en la personne de ses représentants légaux,

*Représentée par Me Matthieu BOCCON GIBOD de la SELARL LEXAVOUE PARIS-VERSAILLES, avocat postulant du barreau de PARIS, toque : C2477*
*Représentée par Me Christophe SERAGLINI du cabinet FRESHFIELDS BRUCKHAUS DERINGER LLP, avocat plaidant du barreau de PARIS, toque : J007*

### COMPOSITION DE LA COUR :

L'affaire a été débattue le 19 Avril 2022, en audience publique, devant la Cour composée de :
M. François ANCEL, Président
Mme Fabienne SCHALLER, Conseillère
Mme Laure ALDEBERT, Conseillère

qui en ont délibéré, un rapport a été présenté à l'audience par Monsieur François ANCEL dans les conditions prévues par l'article 804 du code de procédure civile.

**Greffier,** lors des débats **:** Mme Najma EL FARISSI

**ARRÊT :**

      - contradictoire

      - par mise à disposition de l'arrêt au greffe de la Cour, les parties en ayant été préalablement avisées dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

      - signé par François ANCEL, Président et par Najma EL FARISSI, greffière à laquelle la minute de la décision a été remise par le magistrat signataire.

**I/ FAITS ET PROCÉDURE**

**1-Rusoro Mining Limited** (ci-après désignée la société Rusoro) est une société de droit canadien, dont le siège est à Vancouver, qui exerce son activité dans le domaine de l'acquisition, de l'exploration et de l'exploitation de mines d'or.

2-Entre 2006 et 2008, la société Rusoro a acquis une participation majoritaire dans plusieurs sociétés vénézuéliennes qui détenaient des concessions minières et contrats pour l'exploitation, le développement et l'exploitation d'or et d'autres minéraux dans le sud-est de l'Etat de Bolivar au Venezuela.

3-Au cours des années 2009 et 2010, la République bolivarienne du Venezuela a adopté plusieurs mesures de restriction à l'exportation d'or, ainsi que des règles relatives aux contrôles des changes.

4-Le 16 septembre 2011, le Gouvernement vénézuélien a adopté un décret de nationalisation qui prévoyait le transfert des activités d'exploitation aurifère à des sociétés mixtes à participation publique majoritaire.

5-A l'issue de la période de négociation et faute d'accord sur les modalités de transfert, les droits miniers de la société Rusoro et de ses filiales se sont trouvés éteints de plein droit le 15 mars 2012. La société Rusoro s'est retirée des zones d'exploitation et la République vénézuélienne en a pris possession en avril 2012.

6-Le 17 juillet 2012, la société Rusoro a déposé une demande d'arbitrage auprès du Centre international pour le règlement des différends relatifs aux investissements (CIRDI), sur le fondement du traité bilatéral d'investissement signé entre le Canada et la République bolivarienne du Venezuela (TBI) le 1er juillet 1996.

7-Par une sentence rendue à Paris le 22 août 2016 dans l'affaire CIRDI n°ARB (AF)/12/5 opposant la République bolivarienne du Venezuela et la société Rusoro, le tribunal arbitral, après avoir relevé la prescription des demandes fondées sur les mesures prises par l'Etat vénézuélien en 2009, a retenu que celui-ci avait violé, d'une part, l'article VII du TBI en expropriant l'investissement de la société Rusoro sans indemnités, et d'autre part, le paragraphe 6 de l'Annexe au TBI en raison des décisions étatiques prises en 2010.

8-Le 19 octobre 2016, la République bolivarienne du Venezuela a formé un recours en annulation à l'encontre de cette sentence arbitrale.

9-Le 16 mars 2017, celle-ci a été revêtue de l'exequatur par une ordonnance du conseiller de la mise en état.

10-Le 29 janvier 2019, la cour d'appel de Paris a annulé la sentence arbitrale mais seulement en ce qu'elle a condamné la République bolivarienne du Venezuela à payer à la société Rusoro la somme de 966.500.000 USD pour l'expropriation sans indemnités de son investissement aux motifs que les parties contractantes avaient assujetti leur offre d'arbitrage au respect de la condition énumérée par l'article XII paragraphe 3), d) selon laquelle un tribunal arbitral constitué en vertu du TBI n'est pas compétent pour examiner les faits dommageables dont l'investisseur avait connaissance ou aurait dû avoir connaissance depuis plus de trois années à la date de la saisine.

11-Le 31 mars 2021, la société Rusoro s'est pourvue en cassation contre cet arrêt.

12-Par arrêt du 31 mars 2021, la Cour de cassation a cassé et annulé, en toutes ses dispositions, l'arrêt de la cour d'appel en considérant qu'en statuant ainsi, alors que le délai de prescription prévu au paragraphe 3), d) de l'article XII de l'Accord ne constitue pas une exception d'incompétence, mais une question relative à la recevabilité des demandes, qui ne relève pas de l'article 1520, 1°, du code de procédure civile, la cour d'appel avait violé le texte susvisé.

13-L'affaire est renvoyée devant la cour d'appel de Paris autrement composée.

14-La République bolivarienne du Venezuela a ainsi saisi la cour d'appel de Paris le 1er juin 2021.

15-La clôture a été prononcée le 12 avril 2022.


## II/ PRÉTENTIONS

**16-Aux termes de ses dernières conclusions notifiées par voie électronique le 11 avril 2022, la République bolivarienne du Venezuela demande à la cour, au visa notamment des articles 1520 et 700 du code de procédure civile, de bien vouloir** :

> **ANNULER** la sentence arbitrale rendue à Paris, le 22 août 2016, par messieurs le Professeur Juan Fernández-Armesto, le Professeur Francisco Orrego Vicuña et le Juge Bruno Simma,
>
> **CONDAMNER** Rusoro Mining Ltd. au paiement de la somme de 150 000 euros en application de l'article 700 du Code de procédure civile ainsi qu'aux entiers dépens.

**17-Aux termes de ses dernières conclusions notifiées par voie électronique du 8 avril 2022, la société Rusoro demande à la cour, au visa notamment des articles 122, 125, 1466, 1504 et suivants, 699 et 700 du code de procédure civile, de bien vouloir** :

> **DECLARER** irrecevable le moyen relatif au défaut de compétence ratione temporis soulevé par la République bolivarienne du Venezuela au soutien de son recours en annulation contre la sentence arbitrale rendue le 16 (sic) août 2016 dans l'affaire ARB(AF)/12/5 ;
>
> **DECLARER** irrecevable le moyen relatif au prétendu non-respect de la condition relative à la tentative préalable de règlement amiable du différend soulevé par la République bolivarienne du Venezuela au soutien de son recours en annulation contre la sentence arbitrale rendue le 16 août 2016 dans l'affaire ARB(AF)/12/5 ;
>
> **Juger mal fondés** l'ensemble des moyens soulevés par la République bolivarienne du Venezuela au soutien de son recours en annulation contre la sentence arbitrale rendue le 16 août 2016 dans l'affaire ARB(AF)/12/5.

En conséquence :

**REJETER** le recours en annulation contre la sentence arbitrale rendue le 16 août 2016 dans l'affaire ARB(AF)/12/5 formé par la République bolivarienne du Venezuela ;

**CONFERER** l'exequatur à la sentence arbitrale rendue le 16 août 2016 dans l'affaire ARB(AF)/12/5, en application de l'article 1527 alinéa 2 du Code de procédure civile, et ce faisant confirmer l'ordonnance d'exequatur du Conseiller de la mise en état du 16 mars 2017 ;

**CONDAMNER** la République bolivarienne du Venezuela à payer à Rusoro la somme de 350.000 euros au titre de l'article 700 du Code de procédure civile ; et

**CONDAMNER** la République bolivarienne du Venezuela aux entiers dépens, en application de l'article 699 du Code de procédure civile.

En tout état de cause :

**REJETER** toute demande autre, plus ample ou contraire de la République bolivarienne du Venezuela, en ce compris la demande formée au titre de l'article 700 du Code de procédure civile.

### III/ MOTIFS DE LA DECISION

*Sur le moyen tiré de l'incompétence du tribunal arbitral (article 1520, 1° du code de procédure civile) ;*

**18-La République bolivarienne du Venezuela** fait valoir en premier lieu que la détermination de la compétence du tribunal arbitral suppose la réunion des conditions énoncées à l'article XII du TBI et que le respect de la condition posée au paragraphe 3) d) de cet article, placé à l'intérieur de l'offre d'arbitrage, et interprété conformément à la coutume internationale exprimée par la Convention de Vienne sur le droit des traités du 23 mai 1969, pose une question de juridiction au sens de l'article 1520 1° du Code de procédure civile.

19-Elle rappelle à cet égard que cette clause du TBI exprime l'offre d'arbitrer souscrite par les Etats signataires du TBI, Canada d'un côté, et Venezuela de l'autre, au profit des personnes qu'elle vise sous les conditions qu'elle précise et que le paragraphe 5) de l'article XII énonce expressément que : «Chacune des parties contractantes donne, par les présentes, son consentement inconditionnel à la soumission d'un différend à l'arbitrage international conformément aux dispositions du présent Article. » de sorte que la compétence des arbitres, saisis en vertu du TBI, découle de l'acceptation de l'offre d'arbitrage contenue à l'article XII et que les conditions énoncées au paragraphe 3 de l'article XII pour le recours à l'arbitrage participent donc de la définition du consentement de l'investisseur prétendu à l'offre d'arbitrer.

20-Elle expose que selon le paragraphe 3 de l'article XII du TBI sont exclues de la compétence du Tribunal des prétentions portant sur une « violation » ou un préjudice subi «en raison » de cette violation, s'il s'est écoulé plus de trois ans entre la date à laquelle l'investisseur a pris connaissance ou aurait dû prendre connaissance de cette violation et de ce préjudice, et la date de la soumission du différend à l'arbitrage et qu'en l'espèce la requête d'arbitrage a été déposée le 17 juillet 2012 de sorte que devaient donc être exclues de la compétence du Tribunal toutes les prétentions découlant d'une violation et d'un préjudice dont la société Rusoro a eu ou bien aurait dû avoir connaissance avant le 17 juillet 2009.

21-Elle précise que la somme de 966 500 000 USD accordée à la société Rusoro a été déterminée par le Tribunal sur la base de la capitalisation boursière de cette société établie à la date du 28 février 2008 ou encore sur la base du montant de l'investissement effectué par la société Rusoro entre 2006 et 2008 pour l'acquisition des actifs aurifère au Venezuela et ce alors que la valeur des actifs aurifères de la société Rusoro au Venezuela, ainsi que sa capitalisation boursière, ont diminué de manière très significative entre 2006 et le 17 juillet 2009, date butoir délimitant la portée ratione temporis de la compétence du Tribunal (avec une baisse particulièrement nette entre le 28 février 2008 et le 17 juillet 2009).

22-Elle soutient que la société Rusoro a eu connaissance de la diminution de la valeur de ses actifs et de sa capitalisation bien avant le 17 juillet 2009 et qu'ainsi toute prétention relative au préjudice subi par elle en raison de cette diminution est donc exclue de la portée ratione temporis de la compétence du Tribunal de sorte que la sentence encourt l'annulation, en ce que le Tribunal s'est prononcé sur des préjudices dont la société Rusoro a eu ou bien aurait dû avoir connaissance avant le 17 juillet 2009.

23-Elle estime que sous couvert d'indemnisation, le tribunal arbitral s'est prononcé sur des mesures dont il ne pouvait connaître en accordant une réparation pour des mesures intervenues au-delà du délai enfermant la juridiction du Tribunal aux termes du TBI.

24-La République bolivarienne du Venezuela expose ensuite, que le tribunal arbitral n'a pas respecté la condition relative à la tentative préalable de règlement amiable du différend.

25-Elle soutient que ce grief est recevable car elle n'y a pas renoncé en ayant contesté devant le tribunal arbitral la compétence de celui-ci et que ce grief s'inscrit dans le prolongement de la contestation de la compétence.

26-Elle estime que la rédaction des deux premiers paragraphes - a) et b) - de l'article XII montre que le préalable de règlement amiable ne constitue pas seulement un obstacle à la demande de l'investisseur mais un empêchement à la mise en œuvre du mécanisme d'arbitrage lui-même et ainsi un préalable au recours à l'arbitrage.

27-Elle expose que la lettre en date du 15 décembre 2011 dont se prévaut la société Rusoro ne permet pas de justifier d'une tentative de règlement amiable car elle ne répond pas aux exigences posées par l'article XII du TBI, faute notamment de comporter toutes précisions quant à la nature ou au montant de l'éventuel préjudice allégué par cette société. Elle estime donc que cette lettre du 15 décembre 2011 n'a donné naissance à aucun « différend » au sens de l'article XII, paragraphe 2 du TBI et qu'elle n'a pas fait courir le délai de six mois prévu par cette disposition pour parvenir au règlement à l'amiable.

28-Enfin, la République bolivarienne du Venezuela rappelle que conformément à l'article XII 1) du TBI, la compétence est subordonnée à une double exigence , d'une part d'une « violation du Traité » et d'autre part, « en raison de cette violation », de sorte que le Tribunal est compétent seulement pour statuer sur un préjudice consécutif à une « violation » du TBI que le tribunal doit avoir constatée.

29-Elle soutient que le Tribunal arbitral a statué sans pouvoir et en dehors du champ de compétence *ratione materiae* en ayant accordé à la société Rusoro, une indemnité estimée sur des montants remontant à plusieurs années avant l'expropriation, et donc, sans lien avec la violation.

**30-En réponse la société Rusoro** considère que le tribunal arbitral s'est valablement déclaré compétent.

31-Elle soutient en premier lieu que le moyen tiré de l'incompétence ratione temporis du Tribunal Arbitral est irrecevable car il ne relève d'aucun des moyens d'annulation de l'article 1520 du code de procédure civile, l'article XII.3 d) du TBI qui impose de

soumettre les demandes d'arbitrage dans un délai de trois ans à compter de la date où l'investisseur a pris connaissance ou aurait dû prendre connaissance de la violation et du préjudice subi, énonçant un délai de prescription.

32-Elle précise que le fait que la condition litigieuse ait été instituée par un traité bilatéral d'investissement (plutôt que dans une clause d'arbitrage insérée dans un contrat commercial) n'a aucune incidence sur sa qualification et que le fait d'assimiler systématiquement tout ce qui serait prévu dans des traités bilatéraux d'investissement comme tenant au consentement des Etats, et donc à la compétence, dénote d'une confusion sur la notion de consentement.

33-Elle estime que cette prétention fondée sur la prétendue incompétence ratione temporis du Tribunal Arbitral est en toute hypothèse infondée et cache une demande de révision au fond.

34-La société Rusoro fait valoir en second lieu que la prétention fondée sur le non-respect allégué de la condition relative à la tentative préalable de règlement amiable du différend est irrecevable et infondée. Elle considère que celle-ci ne constitue pas un grief susceptible de donner lieu à l'annulation de la sentence arbitrale selon l'article 1520, 1° dès lors qu'elle ne touche pas à la compétence du tribunal arbitral, mais a trait à la recevabilité de la demande étant observé qu'en l'espèce, le TBI ne prévoit pas une véritable procédure de conciliation préalable mais se contente de prévoir qu'un délai de six mois doit s'écouler entre la notification d'un avis de différend par l'investisseur et sa demande d'arbitrage.

35-Elle ajoute que le Venezuela doit être réputé avoir renoncé à la tentative préalable de règlement amiable de différend sur le fondement de l'article 1466 du CPC, faute d'avoir invoqué cette irrégularité devant le tribunal arbitral.

36-Elle soutient qu'en tout état de cause, ce grief est infondé dès lors qu'elle a rempli les conditions du TBI tenant à la notification à la République bolivarienne du Venezuela de l'existence d'un différend au sens de l'article XII du TBI.

37-Enfin, elle prétend que le moyen relatif au défaut de compétence *ratione materiae* est infondé et cache une demande de révision au fond. La société Rusoro a soumis à l'examen du tribunal, un différend découlant de violations du traité qui lui ont causé préjudice. Elle estime que Tribunal Arbitral est compétent pour connaître de toute prétention de l'investisseur selon laquelle une violation du Traité lui aurait causé un préjudice et qu'affirmer que le Tribunal est compétent seulement pour statuer sur un préjudice consécutif à une violation du TBI que le tribunal doit avoir constatée revient in fine à estimer que la compétence des arbitres suppose que la violation et le préjudice en découlant doivent être fondés.

**SUR CE**,

38-Selon l'article 1520, 1°, du code de procédure civile, le recours en annulation est ouvert si le tribunal s'est déclaré à tort compétent ou incompétent.

39-Il résulte de ce texte que, sans s'arrêter aux dénominations retenues par les arbitres ou proposées par les parties, le juge de l'annulation contrôle la décision du tribunal arbitral sur sa compétence, en recherchant, tous les éléments de droit ou de fait permettant d'apprécier la portée de la convention d'arbitrage. Il n'en va pas différemment lorsque les arbitres sont saisis sur le fondement des stipulations d'un traité.

40-Lorsque la convention d'arbitrage résulte d'un traité bilatéral d'investissements, la compétence du tribunal arbitral et l'existence de son pouvoir de juger dépendent du traité qui l'investit de sorte que le tribunal arbitral ne peut connaître d'un litige que s'il entre dans le champ d'application du traité et qu'il est satisfait à l'ensemble de ses conditions d'application temporelle, personnelle et matérielle ayant trait à l'existence de ce pouvoir.

41-Cependant, sauf stipulation expresse, ces conditions ne peuvent conduire à priver le tribunal arbitral, ainsi investi, de l'exercice de son pouvoir de juger et notamment faire dépendre la compétence du tribunal de la recevabilité des demandes portées devant lui.

42-En l'espèce, l'offre d'arbitrage de la République du Venezuela résulte de l'accord entre le Gouvernement du Canada et le Gouvernement de la République du Venezuela concernant la promotion et la protection des investissements, conclu le 1er juillet 1996 et entré en vigueur le 28 janvier 1998 (TBI), dont l'article XII relatif au « Règlement des différends entre un investisseur et la partie contractante d'accueil » prévoit que :

« *1) Dans la mesure du possible, tout différend entre une partie contractante et un investisseur de l'autre partie contractante, découlant de la prétention de l'investisseur selon laquelle une mesure prise par la première partie contractante, ou l'omission de prendre une mesure, viole le présent Accord, et selon laquelle également l'investisseur ou une entreprise dont il est directement ou indirectement propriétaire ou actionnaire majoritaire, a subi une perte ou un préjudice en raison de cette violation, est réglé à l'amiable par les intéressés.*

*2) Lorsqu'un différend n'est pas réglé à l'amiable dans les six mois qui suivent le moment où il prend naissance, l'investisseur peut le soumettre à l'arbitrage conformément au paragraphe 4). Aux fins du présent paragraphe, un différend est considéré prendre naissance lorsque l'investisseur d'une partie contractante signifie à l'autre partie contractante un avis écrit selon lequel une mesure prise par la seconde partie contractante, ou l'omission de cette dernière de prendre une mesure, viole le présent Accord, et selon lequel également l'investisseur ou une entreprise dont il est directement ou indirectement propriétaire ou actionnaire majoritaire, a subi une perte ou un préjudice en raison de cette violation.*

*3) L'investisseur peut soumettre un différend à l'arbitrage visé au paragraphe 1), conformément au paragraphe 4), seulement si les conditions suivantes sont remplies:*
*a) il consent par écrit à l'arbitrage;*
*b) il renonce à son droit d'engager d'autres procédures devant un tribunal judiciaire ou administratif de la partie contractante en cause ou dans le cadre d'une procédure de règlement des différends, ou de les mener à terme, relativement à la mesure qui, selon lui, viole le présent Accord;*
*c) Dans le cas où le différend comporte des aspects fiscaux, les conditions prévues au paragraphe 14) du présent Article sont respectées;*
*d) trois ans ou moins se sont écoulés depuis la date à laquelle l'investisseur a pris connaissance ou aurait dû prendre connaissance pour la première fois de la prétendue violation ainsi que de la perte ou du préjudice qu'il a subi.*

*4) L'investisseur en cause peut soumettre le différend à l'arbitrage [du CIRDI en vertu de la Convention de Washington ou en vertu du Mécanisme supplémentaire du CIRDI ou à défaut de signature de la convention de Washington par les parties, par un arbitrage ad hoc selon les règles de la CNUDCI].*

*5) Chacune des parties contractantes donne, par les présentes, son consentement inconditionnel à la soumission d'un différend à l'arbitrage international conformément aux dispositions du présent Article.* ».

**Sur le grief tiré de l'incompétence du tribunal arbitral au regard du non-respect de la condition posée par l'article XII, 3°, d)**

43- Il ne résulte pas des termes de l'offre d'arbitrage précitée ainsi que des conditions d'application du traité que l'exigence énoncée au d) du paragraphe 3) de l'article XII puisse être assimilée une condition d'application du traité et donc à une condition du consentement des parties au recours à l'arbitrage.

44-En effet, ce texte ne dispose pas que le tribunal arbitral constitué en vertu du TBI *« n'est pas compétent »* pour examiner les faits dommageables dont l'investisseur avait connaissance ou aurait dû avoir connaissance depuis plus de trois années à la date de la saisine, mais plus précisément et spécifiquement que « *L'investisseur peut soumettre un différend à l'arbitrage visé au paragraphe 1), conformément au paragraphe 4), seulement si* » cette condition de délai est satisfaite (souligné par la Cour) de sorte que ce texte se rapporte aux conditions d'exercice de l'action de l'investisseur, et non à la compétence en tant que telle du tribunal arbitral.

45-Cette interprétation est au demeurant corroborée par celle figurant au paragraphe 12) de ce même article XII qui envisage à nouveau l'exigence relative à la demande de l'investisseur en énonçant que « *a) Lorsqu'un investisseur présente une demande sur le fondement du présent Article relativement à une perte ou un préjudice subi par une entreprise dont il est directement ou indirectement propriétaire ou actionnaire majoritaire, les dispositions suivantes s'appliquent : (...) (iii) l'investisseur ne peut présenter une demande lorsque plus de trois ans se sont écoulés depuis la date à laquelle l'entreprise a pris connaissance ou aurait dû prendre connaissance pour la première fois de la prétendue violation ainsi que de la perte ou du préjudice qu'elle a subi* » (souligné par la Cour).

46-Il ressort ainsi de ce texte que cette condition de délai, qui s'apparente à un délai de prescription, ne conditionne pas l'aptitude du tribunal arbitral à connaître du litige et donc sa compétence, mais seulement la recevabilité devant ce tribunal, régulièrement investi, de certaines demandes.

47-Enfin, il y a lieu d'observer que le champ d'application dans le temps du traité, dont dépend la compétence du tribunal arbitral, n'est pas déterminée par cet article XII mais par l'article XVI paragraphe 1 selon lequel « *Le présent Accord s'applique à tout investissement effectué par un investisseur de l'une des parties contractantes dans le territoire de l'autre partie contractante avant ou après l'entrée en vigueur des présentes. Il ne confère cependant pas le droit au règlement d'un différend en application de l'article XII et de l'article XIV concernant des mesures prises et menées à bien avant l'entrée en vigueur du présent Accord* » (souligné par la Cour).

48-Il ressort de ces éléments que le moyen soulevé par la République bolivarienne du Venezuela, sous couvert de l'incompétence du tribunal arbitral, vise en réalité à contester la décision de ce tribunal arbitral quant à la recevabilité de la demande formée devant lui par la société Rusoro.

49-Il n'entre pas dans les cas d'ouverture du recours en annulation prévus par l'article 1520 du code de procédure civile.

50-Il convient en conséquence de le rejeter.

### Sur le grief tiré du non-respect du préalable de règlement amiable ;

51-Il ressort de l'article XII, paragraphe 2 du TBI précité que « *Lorsqu'un différend n'est pas réglé à l'amiable dans les six mois qui suivent le moment où il prend naissance, l'investisseur peut le soumettre à l'arbitrage conformément au paragraphe 4) ».*

52-Cependant, le moyen tiré du défaut allégué de mise en œuvre du préalable de règlement amiable prévu à cet article ne constitue pas une exception d'incompétence mais une question relative à la recevabilité des demandes, qui n'entre pas dans les cas d'ouverture du recours en annulation énumérés par l'article 1520 du code de procédure civile.

53-Ce grief, inopérant, sera dès lors également rejeté.

*Sur le grief tiré du non-respect de la portée ratione materiae de l'offre d'arbitrer (article XII, paragraphe 1) ;*

54-S'il ressort du paragraphe 1) de l'article XII précité les parties ont entendu soumettre à l'arbitrage « *tout différend entre une partie contractante et un investisseur de l'autre partie contractante, découlant de la prétention de l'investisseur selon laquelle une mesure prise par la première partie contractante (…) viole le présent Accord, et selon laquelle également l'investisseur (…), a subi une perte ou un préjudice en raison de cette violation* », cette clause ne saurait conduire à subordonner la compétence du tribunal arbitral à la reconnaissance préalable de l'existence d'un lien entre la violation alléguée et le préjudice subi.

55-En effet, l'exigence d'une telle condition cumulative reviendrait à faire dépendre la compétence du tribunal du bien-fondé de la demande.

56-Ce grief sera en conséquence rejeté.

57-Il ressort de l'ensemble de ces éléments que le moyen tiré de l'incompétence du tribunal arbitral sera rejeté.

**Sur le moyen tiré de la violation par le tribunal arbitral de sa mission (article 1520, 3° du code de procédure civile)**

**58-La République bolivarienne du Venezuela** soutient que le tribunal arbitral a violé sa mission qui lui avait été confiée en recourant à des méthodes d'évaluation du préjudice qui ne correspondent pas à celles sur lesquelles le Venezuela et Rusoro s'étaient accordés au cours de la procédure, à savoir, conformément à l'article VII du TBI, la valeur réelle de l'entreprise considérée comme la juste valeur de marché.

59-Elle précise qu'elle ne conteste pas la méthode de calcul employé par le Tribunal mais dénonce, sur le fondement de l'article 1520.3° du Code de procédure civile, le non-respect par le Tribunal de l'accord exprès des parties quant au standard d'évaluation du préjudice devant être mis en œuvre.

60-Elle ajoute que le tribunal arbitral a manqué à sa mission en ne respectant pas l'accord entre les parties sur la date à prendre en considération afin d'évaluer l'indemnisation octroyée à la société Rusoro.

**61-En réponse la société Rusoro** soutient que sous couvert de grief non-fondé de violation de l'article 1520,3° du Code de procédure civile, le moyen ne tend qu'à obtenir une révision au fond de la Sentence dès lors que le Venezuela reproche au Tribunal Arbitral d'avoir commis une erreur dans l'évaluation du préjudice, et non d'être sorti du cadre de sa mission telle qu'elle avait été fixée par les parties.

62-Elle considère que loin d'avoir violé sa mission, le Tribunal Arbitral s'est, au contraire, efforcé de rechercher la juste valeur des investissements de la société Rusoro, sans sortir des limites fixées par les parties. Elle précise que si les parties se sont accordées sur le but à atteindre au vu des termes du Traité – une indemnisation équivalente à la « juste valeur de marché » – il n'y avait en revanche aucun consensus sur les moyens à mettre en œuvre pour atteindre ce but – à savoir les méthodes d'évaluation entre les parties.

63-Elle ajoute que le tribunal arbitral a respecté l'accord des parties concernant la date d'évaluation du préjudice relatif à l'expropriation en retenant le jour d'adoption du Décret de Nationalisation, autrement dit, le 16 septembre 2011, afin de respecter le choix des parties.

**SUR CE,**

64-Selon l'article 1520, 3°, du code de procédure civile, le recours en annulation est ouvert si le tribunal a statué sans se conformer à la mission qui lui avait été confié.

65-La mission des arbitres, définie par la convention d'arbitrage, est délimitée principalement par l'objet du litige, tel qu'il est déterminé par les prétentions des parties sans s'attacher uniquement à l'énoncé des questions dans l'acte de mission.

***Sur le recours à une méthode d'évaluation du préjudice non conforme à l'accord des parties ;***

66-Il ressort du paragraphe 647 de la sentence que le tribunal a constaté que les parties « *s'entendent sur deux points essentiels* » qu'il décide donc d'appliquer « *sans autre discussion* » et notamment sur le fait que « *la 'valeur réelle' visée à l'Art. VII, équivaut à la notion traditionnelle de « juste valeur de marché », définie comme étant le « prix auquel un acheteur disposé à acheter achèterait des produits donnés et le prix auquel un vendeur disposé à vendre les vendrait, sous réserve qu'aucune des deux parties [ne soit] soumise à une quelconque forme de contrainte et que les deux parties soient en possession d'informations valables concernant toutes les circonstances pertinentes liées à l'achat* ». Il réitère cette affirmation au paragraphe 751 de sa sentence.

67-Le tribunal a ensuite considéré que pour déterminer la juste valeur de marché de l'investissement, il devait déterminer « *le montant effectivement investi par Rusoro au Vénézuela aux prix historiques et réévalué sur la base de l'évolution des sociétés de production d'or ; la valeur comptable de cet investissement, la capitalisation boursière de Rusoro et l'évaluation réalisée par l'expert du demandeur* » (§648).

68-Cependant, le tribunal a ensuite considéré que « *Le calcul que le Tribunal doit effectuer est purement hypothétique : dans la réalité, en septembre 2011, aucun acheteur disposant d'informations appropriées concernant le secteur aurifère au Venezuela n'aurait été disposé à acheter une entreprise de production d'or dans ce pays à un prix équitable* » (§ 752), ce qui l'a amené à considérer qu'il devait « *par conséquent calculer la juste valeur de marché d'une entreprise qu'aucun acquéreur averti n'achèterait, à un prix équitable* » (§ 755).

69-La sentence énonce au paragraphe 756 ensuite que « *Le TBI donne au Tribunal quelques indications sur la manière de régler ce problème apparemment inextricable : il prévoit que la valeur de l'actif exproprié doit être établie « immédiatement avant [l'expropriation] ou au moment où le projet d'expropriation est divulgué ». Cette règle a pour objet d'éviter que le prix de l'actif ne soit affecté par les informations émanant de l'Etat d'accueil. La juste valeur de marché que l'Etat doit payer est celle qu'un tiers de bonne foi non informé payerait s'il n'avait pas connaissance de la politique mise en place par l'Etat avant l'expropriation (mais après l'investissement) à l'égard de la société expropriée et de son secteur d'activité* ».

70-Sur la base de ces éléments, le tribunal arbitral a ensuite décider d'aborder « *la quantification exacte de la valeur réelle de l'entreprise vénézuélienne Rusoro* » (§ 761) et a choisi pour ce faire de combiner de manière pondérée trois méthodes d'évaluation, « *l'évaluation de la Valeur de Marché Maximum* », « *l'évaluation comptable* » et « *l'évaluation de l'Investissement Ajustée* » (§ 787 et suivants).

71-Il ressort de ces énonciations que le tribunal arbitral ne s'est ainsi pas écarté de la mission qui lui a été confiée de déterminer la « *juste valeur de marché* » de l'entreprise, mais qu'il a choisi pour déterminer cette juste valeur de s'en remettre à trois méthodes d'évaluation combinées.

---

72-Ainsi sous couvert d'un grief tiré du non-respect de sa mission par le tribunal arbitral, la République Bolivarienne du Venezuela entend en réalité, en remettant en cause l'évaluation effective de la juste valeur de marché de l'entreprise auquel le tribunal a procédé en usant des méthodes précitées, contester le bien-fondé de la décision du tribunal, ce qui échappe au juge de l'annulation.

73-Ce moyen sera en conséquence rejeté.

### *Sur le non-respect de la date d'évaluation du préjudice relatif à l'expropriation ;*

74-En application de l'article VII du TBI relatif à l'expropriation le « *[…] Le montant de l'indemnité se fonde sur la valeur réelle de l'investissement ou des revenus visés par l'expropriation immédiatement avant celle-ci ou au moment où le projet d'expropriation est divulgué, selon la première éventualité, elle est payable à compter de la date d'expropriation  elle porte intérêt au taux commercial habituel, elle est versée sans délai  et elle  est véritablement réalisable et librement cessible* ».

75-Il ressort de la sentence et notamment de son paragraphe 647 que le tribunal arbitral a considéré, conformément à l'accord des parties sur ce point, que « *la date d'évaluation applicable est le 16 septembre 2011, le jour de l'adoption du Décret de Nationalisation* » le tribunal ajoutant que « *ce consensus* » lui évitait ainsi « *d'aborder la question épineuse de la date appropriée pour le calcul relatif aux expropriations illégales* ».

76-Après avoir mis en œuvre les trois méthodes combinées précitées pour chiffrer la valeur de la société Rusoro, le tribunal arbitral a énoncé que « *en appliquant les facteurs de pondération aux trois évaluations, on obtient un résultat de 966,5 millions USD. Il s'agit de la détermination de la valeur réelle de l'investissement de Rusoro au 16 septembre 2011 par le tribunal* » (§ 790).

77-Il ressort de ces éléments qu'il ne peut être reproché au tribunal d'avoir méconnu l'accord des parties sur la date d'évaluation de l'expropriation et ce quand bien même il a pu prendre en compte des paramètres antérieurs à celle-ci.

78-Si au titre de la méthode d'évaluation comptable, le tribunal a pu, pour déterminer la valeur au jour de l'expropriation, prendre en compte « la valeur d'entreprise de Rusoro » qui s'élevait selon Bloomberg le « 28 février 2008 », à 700,6  millions  USD (§ 711), cet élément l'a été comme un paramètre à prendre en compte pour fixer cette valeur au jour de l'expropriation puisque le tribunal a relevé que cette valeur « *a ensuite commencé à chuter rapidement et cette tendance s'est maintenue jusqu'à ce que la capitalisation boursière s'effondre pour atteindre 106,8 millions USD le 5 août 2011* » (§715).

79-C'est donc en pondérant l'ensemble de ces éléments factuels, avec le cours de l'or tel qu'il était fixé moins d'un mois avant l'expropriation (§ 658), que le tribunal a chiffré l'évaluation comptable de la société Rusoro au jour de l'expropriation sans qu'il lui soit interdit de prendre en compte tous les paramètres utiles, y compris ceux antérieurs.

80-En outre, si pour les autres valorisations (l'évaluation comptable et l'évaluation de l'investissement ajusté), République Bolivarienne du Venezuela soutient que le tribunal s'est aussi basé sur la valeur de l'entreprise de Rusoro à des dates antérieures à l'expropriation, situées entre 2006 et 2008, il convient de relever que cette allégation manque en fait alors que dans son paragraphe 766, le tribunal affirme que la « *valeur comptable nette des actifs de Rusoro, au 30 septembre 2011 (dernier jour du trimestre au cours duquel a eu lieu l'expropriation), s'élevait à  908 millions  USD [l'Evaluation Comptable]* ».

81-Enfin, si la méthode de l'évaluation ajustée de l'investissement a nécessité de prendre en compte les investissements initiaux effectués par la société Rusoro, cet élément constituait un paramètre de départ pour permettre de déterminer une valeur au jour de l'évaluation aux investissements réalisés dans le passé compte tenu du cours de l'or, le tribunal ayant observé que l'investissement initial de la société Rusoro (de 774,3 millions USD) l'avait été à un moment où les cours de l'or étaient faibles alors que l'expropriation a eu lieu au moment où ces cours « *avaient atteint leur maximum* » (§ 682).

82-Il ressort de ces éléments que le tribunal arbitral n'a nullement méconnu la date de l'évaluation du préjudice liée à l'expropriation et ainsi sa mission.

83-Ce moyen sera en conséquence également rejeté.

84-Au regard de l'ensemble de ces éléments, le recours en annulation est rejeté et conformément aux articles 1524 et 1527 al. 2 du code de procédure civile, ce rejet confère l'exequatur à la sentence arbitrale rendue le 22 août 2016 dans l'affaire ARB(AF)/12/5 sans qu'il y ait lieu à statuer sur la demande visant à confirmer l'ordonnance d'exequatur rendue par le conseiller de la mise en état du 16 mars 2017.

**Sur les frais et dépens ;**

85-Il y a lieu de condamner la République Bolivarienne du Venezuela, partie perdante, aux dépens qui seront recouvrés conformément aux dispositions de l'article 699 du code de procédure civile.

86-En outre, elle doit être condamnée à verser à la société Rusoro, qui a dû exposer des frais irrépétibles pour faire valoir ses droits, une indemnité au titre de l'article 700 du code de procédure civile qu'il est équitable de fixer à la somme de 150 000 euros.

## VI/ DISPOSITIF

La cour, par ces motifs :

1-Rejette le recours en annulation contre la sentence rendue à Paris le 22 août 2016 sous l'égide du CIRDI (affaire n°ARB(AF)/12/5) ;

2-Condamne République Bolivarienne du Venezuela à payer à la société Rusoro Mining Limited la somme de 150 000 euros au titre de l'article 700 du code de procédure civile ;

3-Condamne République Bolivarienne du Venezuela aux dépens qui seront recouvrés conformément à l'article 699 du code de procédure civile.

**La greffière**                              **Le Président**

**Najma EL FARISSI**                          **François ANCEL**

---