## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| RUSORO MINING LIMITED, | : |
| *Plaintiff*, | : |
|  | :    Misc. No. 21-mc-00481-LPS |
| v. | : |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : |
| *Defendant*. | : |

**MEMORANDUM OF LAW OF PETRÓLEOS DE VENEZUELA, S.A. IN SUPPORT OF ITS CROSS-MOTION TO DISMISS AND TO VACATE THE REGISTERED JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS***

|  |  |
|---|---|
|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|  | Samuel T. Hirzel, II (#4415) |
|  | Aaron M. Nelson (#5941) |
|  | Jamie L. Brown (#5551) |
| OF COUNSEL: | 300 Delaware Avenue, Suite 200 |
|  | Wilmington, DE 19801 |
| Joseph D. Pizzurro | (302) 472-7300 |
| Julia B. Mosse | shirzel@hegh.law |
| Kevin A. Meehan | anelson@hegh.law |
| Juan O. Perla | jbrown@hegh.law |
| CURTIS, MALLET-PREVOST, |  |
| COLT & MOSLE LLP | *Attorneys for Intervenor* |
| 101 Park Avenue | *Petróleos de Venezuela, S.A.* |
| New York, NY 10178 |  |
| (212) 696-6000 |  |
| jpizzurro@curtis.com |  |
| jmosse@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |

October 28, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT ...........................................................................................2

STATEMENT OF FACTS ...................................................................................................5

        A.     Procedural History ................................................................................5

        B.     The Republic's Relationship with PDVSA Has Changed
Materially Since the Court's Decision in *Crystallex I* ...............................6

        C.     The Court Has Declined to Give Collateral Estoppel Effect to Its
Alter-Ego Ruling in *Crystallex I* .............................................................9

        D.     Plaintiff's Attachment Motion Mirrors Those Filed by OIEG,
Huntington Ingalls and ACL ................................................................10

ARGUMENT ....................................................................................................................11

    I.     This Court Lacks Jurisdiction Because Plaintiff Cannot Meet Its Burden of
Proving That PDVSA Is Currently the Alter Ego of the Republic under
*Bancec* .............................................................................................................11

        A.     Plaintiff's Arguments Regarding Collateral Estoppel and Pertinent
Time Are Foreclosed by This Court's Prior Decisions............................12

        B.     Actions of the Unrecognized Maduro Regime Are Irrelevant Under
*Bancec* .................................................................................................15

        C.     Plaintiff's Allegations Concerning the Interim Government Are
Insufficient to Rebut the *Bancec* Presumption of Separateness.................16

    II.    The Attachment Motion Must Be Denied Under Delaware Law .........................17

    III.   OFAC Sanctions Prohibit the Issuance of a Conditional Writ of
Attachment.......................................................................................................18

    IV.   OFAC Sanctions Prohibit Registration of a Judgment in this Court Under
28 U.S.C. § 1963..............................................................................................19

    V.    The Attachment Motion Is Not Justiciable ........................................................20

CONCLUSION.................................................................................................................20

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aurelius Cap. Partners, LP v. Republic of Argentina*,
    584 F.3d 120 (2d Cir. 2009) ...................................................................... 13

*Bramble Transp., Inc. v. Sam Senter Sales, Inc.*,
    294 A.2d 97 (Del. Super. Ct. 1971),
    *aff'd* 294 A.2d 104 (Del. 1972)................................................................. 14

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
    154 A.2d 684 (Del. 1959) ......................................................................... 18

*Calderon–Cardona v. JPMorgan Chase Bank,
    N.A.*, 867 F. Supp. 2d 389 (S.D.N.Y. 2011) ............................................ 14

*Cassirer v. Thyssen-Bornemisza Foundation*,
    142 S. Ct. 1502 (2022)............................................................................. 18

*Crosse v. BCBSD, Inc.*,
    836 A.2d 492 (Del. 2003) ................................................................... 5, 18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    24 F.4th 242 (3d Cir. 2022) ..................................................................... 18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ................................................... 8, 13, 14, 17

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    No. 17-mc-l51-LPS, 2021 WL 129803 (D. Del. Jan. 14, 2021)...................... 3, 9, 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018)................................................... passim

*Crystallex Int'l Corp. v. PDV Holding, Inc.*,
    No. 15-cv-1082-LPS, 2019 WL 6785504 (D. Del. Dec. 12, 2019) .................. passim

*Dean Witter Reynolds, Inc. v. Fernandez*,
    741 F.2d 355 (11th Cir. 1984) ................................................................. 19

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007) ..................................................................... 17

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)......................................................................... passim

*Flatow v. Islamic Republic of Iran*,
    308 F.3d 1065 (9th Cir. 2002) ................................................................. 16

*Gater Assets Ltd. v. Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ........................................................................ 16

*GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*,
    822 F.3d 598 (D.C. Cir. 2016).................................................................. 16

*Guaranty Tr. Co. v. United States*,
   304 U.S. 126 (1938) ............................................................................................. 15

*Hendricks & Lewis v. Clinton*,
   766 F.3d 991 (9th Cir. 2014) .............................................................................. 17

*Jiménez v. Palacios*,
   250 A.3d 814 (Del. Ch. 2019),
   *aff'd* 237 A.3d 68 (Del. 2020) ................................................................. 7, 15, 16

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ....................................................................................... 19

*Latvian State Cargo & Passenger S.S. Line v. McGrath*,
   188 F.2d 1000 (D.C. Cir. 1951) ......................................................................... 16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................... 20

*Nat'l Union Fire Ins. Co. v. Republic of China*,
   254 F.2d 177 (4th Cir. 1958) ............................................................................. 16

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015) ............................................................................................. 12

*OI Eur. Grp., B.V. v. Bolivarian Republic of Venezuela*,
   No. 19-mc-290-LPS, 2022 WL 611563 (D. Del. Mar. 2, 2022) .............. 2, 11, 15, 16

*Pescatore v. Pan Am. World Airways, Inc.*,
   97 F.3d (2d Cir. 1996) ....................................................................................... 17

*Peterson v. Islamic Republic of Iran*,
   627 F.3d 1117 (9th Cir. 2010) ........................................................................... 17

*Pfizer v. Government of India*,
   434 U.S. 308 (1978) ........................................................................................... 15

*Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014) ........................................................................................... 17

*Republic of Panama v. Air Panama Internacional, S.A.*,
   745 F. Supp. 669 (S.D. Fla. 1988) ..................................................................... 16

*Schreiber v. Kellogg*,
   50 F.3d 264 (3d Cir. 1995) ................................................................................ 17

*The Maret*,
   145 F.2d 431 (3d Cir. 1944) .............................................................................. 15

*Trump v. New York*,
   141 S. Ct. 530 (2020) ......................................................................................... 20

*UAB Skyroad Leasing v. OJSC Tajik Air*,
   No. 20-cv-00763 (APM), 2021 WL 254106 (D.D.C. Jan. 26, 2021) ................ 16

*United States v. Belmont*,
   301 U.S. 324 (1937) ........................................................................................... 15

*United States v. Pink,*
    315 U.S. 203 (1942) .................................................................................. 15

*Winston & Strawn v. McLean,*
    843 F.3d 503 (D.C. Cir. 2016) ................................................................... 17

*Zivotofsky v. Kerry,*
    576 U.S. 1 (2015) ............................................................................... 15, 16

## STATUTES

28 U.S.C. § 1330(b) .......................................................................................... 1

28 U.S.C. § 1603(b) ........................................................................................ 11

28 U.S.C. § 1606 ............................................................................................. 18

28 U.S.C. § 1610 ............................................................................................. 14

28 U.S.C. § 1962 ............................................................................................. 19

28 U.S.C. § 1963 ......................................................................................... 5, 19

8 Del. C. § 324(a) ...................................................................................... 13, 18

## RULES

Fed. R. Civ. P. 60(b)(4) .................................................................................... 1

Fed. R. Civ. P. 69 ........................................................................................... 13

Fed. R. Civ. P. 69(a) .................................................................................... 4, 17

## REGULATIONS AND EXECUTIVE ORDERS

31 C.F.R. § 591.202 ........................................................................................ 19

31 C.F.R. § 591.309 ........................................................................................ 19

31 C.F.R. § 591.310 ........................................................................................ 19

31 C.F.R. § 591.407 ........................................................................................ 19

Exec. Order No. 13850, 83 Fed. Reg. 55,243 (Nov. 1, 2018) ...................... 19

## OTHER AUTHORITIES

U.S. Dep't of Treasury, Other Sanctions Programs
    Venezuela Sanctions, FAQ No. 808 (Dec. 9, 2019) ................................. 19

Petróleos de Venezuela, S.A. ("PDVSA") respectfully submits this memorandum of law in support of its cross-motion to dismiss this proceeding for lack of jurisdiction and to vacate the registered judgment docketed by this Court on November 4, 2021 (D.I. 1) pursuant to Fed. R. Civ. P. 60(b)(4) and in opposition to plaintiff Rusoro Mining Limited's ("Plaintiff" or "Rusoro") Motion for an Order Authorizing the Issuance of a Writ of Attachment *Fieri Facias* (D.I. 2) (the "Attachment Motion").

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff is a judgment creditor of the Bolivarian Republic of Venezuela (the "Republic" or "Venezuela") whose judgment stems from an arbitral award that was confirmed and recognized by the U.S. District Court for the District of Columbia (the "D.C. District Court") on March 2, 2018.  D.I. 4-1 at 1.  On November 4, 2021, Plaintiff registered its judgment in this Court (D.I. 1) (the "Registered Judgment").  On February 9, 2022, Plaintiff filed the Attachment Motion, which seeks an order authorizing the issuance and service of a writ of attachment *fieri facias* against PDVSA's shares of PDV Holding, Inc. ("PDVH") that is conditioned upon the lifting of sanctions imposed by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") or OFAC's grant of a specific license to Plaintiff.  Plaintiff seeks this conditional writ against PDVSA's property on the theory that the PDVH shares are actually, ***at this time***, the property of the Republic, because PDVSA allegedly is ***currently*** the Republic's alter ego. PDVSA was granted leave to intervene and now submits this memorandum of law in support of its cross-motion to dismiss for lack of subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act (the "FSIA")[1] and to vacate the Registered Judgment and in opposition to the Attachment Motion.

---

[1] Because the Court lacks subject matter jurisdiction and because PDVSA was never properly served, the Court also lacks personal jurisdiction over PDVSA.  28 U.S.C. § 1330(b).

## SUMMARY OF ARGUMENT[2]

I.      The Attachment Motion presents a threshold question that goes both to this Court's subject matter jurisdiction under the FSIA and to Plaintiff's right to attempt to reach PDVSA's assets to satisfy a judgment rendered solely against the Republic: Is PDVSA the alter ego of the Republic under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*")?  If the answer is no, then two conclusions automatically follow: the Attachment Motion must be dismissed for lack of jurisdiction and PDVSA's assets cannot be treated as assets of the Republic for any purpose.

The FSIA provides the exclusive source of subject matter jurisdiction over actions against a foreign state or its agencies or instrumentalities, such as PDVSA, but only when an exception to sovereign immunity applies.  No such exception applies to PDVSA here.  Plaintiff offers three arguments why PDVSA should be considered the alter ego of the Republic under *Bancec*, which would extend the Court's jurisdiction over the Republic to PDVSA.  Each is meritless.

---

[2] PDVSA acknowledges that certain arguments made in this brief—namely, that the OFAC sanctions regime requires vacatur of the Registered Judgment, denial of the Attachment Motion, and dismissal of this proceeding, and that the Attachment Motion is not justiciable under Article III of the U.S. Constitution—are inconsistent with the Court's prior decisions in certain related cases.  *See, e.g.*, *OI Eur. Grp., B.V. v. Bolivarian Republic of Venezuela* ("*OIEG*"), No. 19-mc-290-LPS, 2022 WL 611563 (D. Del. Mar. 2, 2022).  Nonetheless, PDVSA makes the arguments to preserve them for further review.  For that reason, PDVSA does not repeat here all of the arguments made in its prior briefs and instead incorporates them by reference.  *See Phillips Petroleum Co. Venezuela Ltd., et al. v. Petróleos de Venezuela, S.A., et al.* ("*Phillips*"), No. 19-mc-342-LPS, D.I. 11 (D. Del. Jan. 6, 2020); *id.*, D.I. 33 (D. Del. Feb. 16, 2021); *id.*, D.I. 36 (D. Del. Mar. 9, 2021; *OIEG*, No. 19-mc-290-LPS, D.I. 65 (D. Del. Apr. 2, 2021); *id.*, D.I. 95 (D. Del. May 25, 2021); *id.*, D.I. 101 (D. Del. June 1, 2021); *Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela* ("*Northrop*"), No. 19-mc-257-LPS, D.I. 32 (D. Del. Apr. 2, 2021); *id.*, D.I. 51 (D. Del. May 25, 2021); *id.*, D.I. 53 (D. Del. June 1, 2021); *ACL1 Invs. Ltd., et al. v. Bolivarian Republic of Venezuela* ("*ACL*"), No. 21-mc-46-LPS, D.I. 22 (D. Del. Jan. 21, 2022); *id.*, D.I. 32 (D. Del. Feb. 4, 2022; *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A., et al.*, Nos. 22-mc-68-LPS & 22-mc-69-LPS, D.I. 10 (D. Del. Mar. 1, 2022); *id.*, D.I. 14 (D. Del. Mar. 14, 2022).  *Phillips*, *OIEG, Northrop*, *ACL*, and *Red Tree* are hereinafter collectively referred to as the "Related Cases."

**I.A.**    Plaintiff argues that the Court should give collateral estoppel effect to its decision in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018) ("*Crystallex I*") that PDVSA was the Republic's alter ego under *Bancec* as of August 2018.  Plaintiff further argues that the "pertinent time" for making the alter-ego determination is not now but 2011, when Plaintiff was injured by the Republic.  Plaintiff's arguments are foreclosed by this Court's prior decisions, which hold that collateral estoppel does *not* apply to the alter-ego ruling in *Crystallex I*, *see Crystallex Int'l Corp. v. PDV Holding, Inc.*, No. 15-cv-1082-LPS, 2019 WL 6785504, at *8 (D. Del. Dec. 12, 2019), and that the "pertinent time" for the alter-ego analysis is "the period between the filing of the motion seeking a writ of attachment [here, February 9, 2022] and the subsequent issuance and service of that writ."  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-l51-LPS, 2021 WL 129803, at *6 (D. Del. Jan. 14, 2021).  Plaintiff offers no basis, and there is none, for disregarding the Court's prior holdings.

**I.B.**    Notwithstanding the indisputable reality that from January 2019 to the present, U.S. courts must recognize Interim President Juan Guaidó and the National Assembly (the "Interim Government"), Plaintiff contends that PDVSA has been Venezuela's alter ego at all times since *Crystallex I*, because the outlaw regime of Nicolás Maduro—unrecognized by the United States and its courts—exercises control over PDVSA *in Venezuela*.  The actions of the illegitimate Maduro regime are legally irrelevant to the *Bancec* analysis for two reasons.  *First*, as this Court previously recognized, "[t]he relevant portion of PDVSA, which is property in the U.S., is under different control under a new legal regime . . . recognized by the U.S." *Crystallex*, 2019 WL 6785504, at *7.  There is no dispute that the Maduro regime has no access to or control over the PDVH shares.  Thus, Plaintiff cannot rely upon the Maduro regime's conduct as a basis

for attaching those shares. *Second*, Plaintiff's reliance upon the acts of the Maduro regime is foreclosed by the political question doctrine. The U.S. Constitution vests the Executive Branch with the exclusive power to recognize foreign governments, and since January 2019, the Executive has recognized the Interim Government as the sole legitimate government of Venezuela and has affirmatively refused to recognize the Maduro regime. The U.S. Supreme Court has consistently held that all U.S. courts are unequivocally bound by such determinations by the Executive. The Executive's recognition of the Interim Government forecloses a finding of an alter-ego relationship between PDVSA and the Republic based upon actions by the unrecognized Maduro regime.

**I.C.** Plaintiff argues that even if the Court considers the acts of the Interim Government, the Interim Government still extensively controls PDVSA. Plaintiff is wrong, and its sparse and conclusory assertions are wholly insufficient to rebut the strong *Bancec* presumption. Since this Court's August 2018 ruling in *Crystallex I*, the relationship between PDVSA and the Republic has changed materially. The Interim Government has enacted new institutional safeguards to ensure the independence of PDVSA, its subsidiaries, and their U.S. assets, including the PDVH shares. PDVSA's *ad hoc* board has observed corporate formalities and maintained strict independence from Venezuela. As a result, Plaintiff cannot meet its burden of proving that PDVSA, as managed by the *ad hoc* board, can currently be considered to be the alter ego of Venezuela.

**II.** Even assuming PDVSA is the Republic's alter ego under *Bancec* for purposes of the FSIA, the Attachment Motion still must be denied because Plaintiff cannot satisfy the additional showing required under Delaware law, applicable by virtue of Fed. R. Civ. P. 69(a). Delaware law permits issuance of a writ of attachment of shares registered in the name of a

judgment debtor's alter ego *only if* the judgment debtor used the putative alter ego as "a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). Plaintiff has not presented—and cannot present—any evidence of such fraud here.

      **III.**    Plaintiff cannot obtain the relief it seeks without *first* obtaining a specific license from OFAC. OFAC regulations prohibit the creation of *any* right or interest in the PDVH shares, including contingent interests, and *any* judicial process that has the purpose, intent, or effect of altering, directly or indirectly, any interest in the PDVH shares, absent a specific license. Plaintiff does not have such a license, and thus, the Attachment Motion must be denied.

      **IV.**    The OFAC sanctions regime requires vacatur of the Registered Judgment. Plaintiff already has violated OFAC regulations by registering its judgment in this Court under 28 U.S.C. § 1963 for the purpose of enforcing it by attaching the PDVH shares, including because registering a judgment automatically creates a judicial lien over any real property owned by the judgment debtor in Delaware now or in the future. The Registered Judgment is thus null and void under OFAC regulations and should be vacated by this Court.

      **V.**    The Attachment Motion is not justiciable under Article III of the U.S. Constitution. In light of OFAC sanctions, a favorable decision would not redress Plaintiff's purported injury, but would merely provide a speculative entitlement that may never have any real-world effect.

**STATEMENT OF FACTS**

      **A.**    **Procedural History**

      Rusoro is a Canadian gold mining company. D.I. 4-1 at 3. On July 17, 2012, Rusoro commenced an arbitration against Venezuela, claiming that it suffered an unlawful expropriation of its mining concessions and contracts in Venezuela in 2011 under the Chávez regime. *Id.* PDVSA was not a party to the arbitration and is not alleged to have had any involvement in the

expropriation.  On August 22, 2016, the tribunal issued an award in favor of Rusoro.  *Id.*  On March 2, 2018, the D.C. District Court recognized the award and entered judgment against the Republic.  Rusoro has no judgment against PDVSA.  On November 5, 2021, Plaintiff registered its judgment in this Court.  D.I. 1.  On February 9, 2022, Plaintiff filed the Attachment Motion. D.I. 2.  On June 15, 2022, the Court granted PDVSA's motion to intervene.  D.I. 20.  Because of the substantial overlap between the issues raised in the instant Attachment Motion and those filed in the Related Cases, the Court also granted PDVSA's request to stay briefing on the Attachment Motion pending the resolution of then-pending petitions for interlocutory appeal to the Third Circuit in the Related Cases.  *See id*.  After the Third Circuit denied the petitions, the Court set October 28, 2022 as PDVSA's date to respond to the Attachment Motion.  D.I. 27.

**B.    The Republic's Relationship with PDVSA Has Changed Materially Since the Court's Decision in *Crystallex I***

On August 9, 2018, this Court held in *Crystallex I* that Venezuela's lack of jurisdictional immunity under the FSIA could be imputed to PDVSA because Crystallex proved that PDVSA was, at that time, Venezuela's alter ego under *Bancec*.  333 F. Supp. 3d at 394, 414.  This Court rejected PDVSA's argument that Crystallex's attachment motion sought to use an alter-ego determination to impose liability on PDVSA for Venezuela's debt and agreed with Crystallex that it was raising an alter-ego theory to "seek[] a more limited finding, namely that the specific property at issue … though nominally held in the name of a third party, is, *at this time*, really the property of the judgment debtor."  *Id.* at 394 (brackets omitted) (emphasis added).  The Court also held that although PDVSA "is a stranger to the entire dispute" between the Republic and Crystallex, *id.* at 422, and Crystallex "has not shown that the Republic abused PDVSA's corporate form to perpetrate a fraud or injustice resulting in harm to Crystallex," *id.* at 403, Crystallex nonetheless proved that PDVSA was Venezuela's alter ego under *Bancec* because it

established that "Venezuela extensively controls PDVSA" and "*Bancec* does not require that the alter ego, whose property is being attached and executed, have been involved in the underlying conduct that harmed the judgment creditor." *Id.* at 399, 423.

PDVSA immediately appealed that decision to the Third Circuit.  While the appeal was pending, Venezuela's political landscape changed dramatically.  In January 2019, Venezuela's National Assembly declared Maduro's presidency illegitimate and National Assembly President Juan Guaidó became the Interim President of Venezuela pursuant to Article 233 of the Venezuelan Constitution.  *Jiménez v. Palacios*, 250 A.3d 814, 821 (Del. Ch. 2019), *aff'd* 237 A.3d 68 (Del. 2020).  On January 23, 2019, the United States government officially recognized Mr. Guaidó as Interim President of Venezuela and rejected the legitimacy of the Maduro regime. *See* No. 20-mc-257-LPS, D.I. 33, Expert Declaration of Allan R. Brewer-Carías dated April 2, 2021 ("Brewer-Carías Decl.") ¶ 27.  The administration of President Biden continues to recognize the Interim Government as the only legitimate government of Venezuela.

On February 5, 2019, the Venezuelan National Assembly enacted the "Statute to Govern a Transition to Democracy to Reestablish the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela" (the "Transition Statute").  Brewer-Carías Decl. ¶ 28.  Article 15 of the Transition Statute empowers Interim President Guaidó to "[a]ppoint *ad hoc* Administrative Boards" of state-owned corporations and other entities "for the purpose of . . . adopting the measures necessary to control and protect State company assets." *Id.* ¶ 31.  Interim President Guaidó exercised his authority under that statute and the Venezuelan Constitution to appoint an *ad hoc* administrative board of PDVSA.  Five days later, the National Assembly passed a special resolution ratifying those appointments. *Id.* ¶ 36.

On April 10, 2019, Interim President Guaidó issued Presidential Decree No. 3, granting "new responsibilities and duties" to PDVSA's *ad hoc* board for the purpose of "protect[ing] the assets of the Venezuelan Government abroad, controlled directly or indirectly by PDVSA." *Id.* ¶ 40; *see also* No. 20-mc-257-LPS, D.I. 35, Declaration of Horacio Francisco Medina Herrera dated April 1, 2021 ("Medina Decl."), Ex. A, Decl. of Luis A. Pacheco, Ex. B, at 12. Presidential Decree No. 3 mandates strict political independence, directing that the PDVSA *ad hoc* board shall not "follow[] political or partisan guidelines," and ordering the board to "exercise the powers conferred herein autonomously and independently, following only technical criteria aimed at the efficient management of PDVSA's direct and indirect subsidiaries organized abroad." Brewer-Carías Decl. ¶¶ 40-41.

In accordance with those legal enactments, PDVSA's *ad hoc* board has maintained strict independence from the Republic. Although PDVSA submits periodic reports to the National Assembly, the board does not take orders or directives from any government official, but instead facilitates PDVSA's role as a shareholder with respect to its direct and indirect U.S. subsidiaries. Medina Decl. ¶¶ 6-7, 11.

In light of these dramatic changes, the Republic—at the direction of the Interim Government—intervened in PDVSA's appeal in *Crystallex* and argued that the Third Circuit should take into account the "new circumstances" of the Interim Government and the safeguards put in place to respect the corporate separateness of PDVSA. Nos. 18-2797, 18-3124 Venezuela C.A. Br. 1, 8, 24-25. On July 29, 2019, the Third Circuit affirmed this Court's August 2018 decision. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex II*"). It held the Court properly applied *Bancec* in the context of a "post-judgment proceeding[]" and agreed Crystallex had established that PDVSA was, as of August

2018, Venezuela's alter ego under *Bancec*. *Id.* at 138-39. The Third Circuit rejected PDVSA's argument "that there must be some connection between the sovereign's abuse of its instrumentality's corporate form and the plaintiff's injury," and held that "[c]ontrol alone, if sufficiently extensive, is an adequate basis to disregard an instrumentality's separate status" for jurisdictional and immunity purposes under *Bancec*. *Id.* at 143.

The Third Circuit declined to consider the "new circumstances" presented by the Republic but stated that "[o]n remand, Venezuela may direct to the District Court credible arguments to expand the record with later events." *Id.* at 144. On remand, the Republic moved to vacate the Court's August 9, 2018 order, arguing, *inter alia*, that the Interim Government had made material changes to PDVSA's governance that vitiated the basis for the alter-ego ruling. No. 17-mc-151-LPS, D.I. 184. On January 14, 2021, this Court denied the Republic's motion, holding that the "pertinent time" for determining the alter-ego relationship between the Republic and PDVSA is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ." *Crystallex*, 2021 WL 129803, at *6. In Crystallex's case, the "pertinent time" for assessing the relationship between the Republic and PDVSA was August 2018, when the United States still recognized the Maduro regime.

C.     **The Court Has Declined to Give Collateral Estoppel Effect to Its Alter-Ego Ruling in *Crystallex I***

On November 4, 2019, OI European Group B.V. ("OIEG"), a judgment creditor of the Republic, registered its judgment in this Court and moved for a writ of attachment against the PDVH shares, arguing that the Court should give collateral estoppel effect to its alter-ego findings in *Crystallex I*. No. 19-mc-290-LPS, D.I. 3. The Court disagreed and denied OIEG's attachment motion. The Court held:

> The question of whether PDVSA can, *under the present circumstances*, be deemed an alter ego of the Republic is not identical to the issue decided in the

> *Crystallex Asset Proceeding*, and has not been actually litigated and decided on the merits. … [T]hings are not at all the same as they were when the Court made its findings in the *Crystallex Asset Proceeding*.  The relevant portion of PDVSA, which is the property in the U.S., is under different control under a new legal regime …, recognized by the U.S.

*Crystallex*, 2019 WL 6785504 at \*7 (internal citations and quotation marks omitted) (emphasis added).  The Court added that "the pertinent date on which an alter ego relationship must exist (or must have existed) may well differ in different cases involving different creditors" and the Court was "not persuaded at this point that [its] finding of an alter ego relationship as of August 2018 is dispositive of whether such a relationship existed at any other time."  *Id.*  Because the Court held that "collateral estoppel does not apply," it concluded that "any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date."  *Id.* at \*8.

On January 15, 2021—one day after the Court's "pertinent time" ruling—the Court denied OIEG's motion for reconsideration of the collateral estoppel decision and reaffirmed that OIEG "must prove, by a preponderance of the evidence, that PDVSA is the alter ego of Venezuela on and as of the pertinent date – *just as Crystallex did in connection with its writ of attachment*."  No. 19-mc-290-LPS, D.I. 43 at 3.

**D.    Plaintiff's Attachment Motion Mirrors Those Filed by OIEG, Huntington Ingalls and ACL**

On February 19, 2021, OIEG filed a renewed motion to attach the PDVH shares and attempted to make an "offer of proof"—largely consisting of allegations concerning the Maduro regime's illegal control of PDVSA assets outside of the U.S.—that it argued demonstrated that "[a]t all times since August 2018, the Venezuelan state's dominance and control of PDVSA's commercial enterprise has persisted."  *Id.*, D.I. 49 at 9.  The same day, Northrop Grumman Ship Systems, Inc. ("Huntington Ingalls") filed a similar attachment motion.  *See* No. 20-mc-257-

LPS, D.I. 26.   On April 30, 2021, the Court held an evidentiary hearing on OIEG's and Huntington Ingalls' attachment motions (the "April 2021 Hearing") during which those creditors "attempted to prove, by a preponderance of the evidence, that PDVSA was the Republic's alter ego as of that time."  No. 19-mc-290-LPS, D.I. 109 at 26-27.  On November 22, 2021, ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (together, "ACL") also filed a similar attachment motion.  No. 21-mc-0046-LPS, D.I. 2.

Virtually all of Rusoro's arguments in support of its Attachment Motion overlap substantially with, or are identical to, those made by OIEG, Huntington Ingalls and/or ACL. Therefore, PDVSA incorporates by reference its submissions and arguments in those cases. Further, both Rusoro and PDVSA agree that, based upon available information, between the date of the April 2021 Hearing and the date Plaintiff's Attachment Motion was filed, there has been no material change to any fact relevant to the factual determination(s) the Court must make with respect to the pending alter-ego issues regarding the relationship between PDVSA and the Republic.  D.I. 30.  PDVSA submits that the evidence presented at the April 2021 Hearing, and in its previously-filed briefs, conclusively demonstrated that the creditors have not carried, and cannot carry, their burdens of establishing an alter-ego relationship between the Interim Government and PDVSA as managed by the *ad hoc* board.

## ARGUMENT

**I.      This Court Lacks Jurisdiction Because Plaintiff Cannot Meet Its Burden of Proving That PDVSA Is Currently the Alter Ego of the Republic under *Bancec***

PDVSA incorporates by reference the arguments made in its previously-filed briefs in *OIEG*, *Northrop*, and *ACL*.  *See* note 2, *supra*.  Because PDVSA is an "agency or instrumentality of a foreign state" as defined in the FSIA, 28 U.S.C. § 1603(b), the FSIA "provides the sole basis for obtaining jurisdiction over" PDVSA.  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30

(2015) (quotation marks omitted).  Thus, unless Plaintiff can meet its burden of establishing that one of the "FSIA's express exceptions to sovereign immunity applies" to PDVSA, this Court lacks subject matter jurisdiction.  *OBB*, 577 U.S. at 31 (quotation marks omitted).

Plaintiff argues that the Court's jurisdiction over the Republic extends to PDVSA because:  (1) the Court's ruling in *Crystallex I* that PDVSA was Venezuela's alter ego as of August 2018 should be given collateral estoppel effect (*see* D.I. 4-1 at 26-28); (2) since *Crystallex I*, PDVSA has remained Venezuela's alter ego because the Maduro regime has continued to exercise extensive control over PDVSA in Venezuela (*see id.* at 28-32); and (3) the Interim Government extensively controls PDVSA within the United States (*see id.* at 32-33).  As PDVSA previously argued, and as summarized below, each of these arguments fails.

### A.    Plaintiff's Arguments Regarding Collateral Estoppel and Pertinent Time Are Foreclosed by This Court's Prior Decisions

This Court has held that "collateral estoppel does not apply" to its August 2018 alter-ego ruling in *Crystallex I* and that "any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date."  *Crystallex*, 2019 WL 6785504 at *8.  Faced with this precedent, Plaintiff mistakenly argues that "it is well-settled that the 'pertinent' time for the purposes of a determination of alter ego liability is the date of the injury."  D.I. 4-1 at 27.  Plaintiff ignores that this Court has already held that the "pertinent time" for the alter-ego analysis for present purposes is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ."  *Crystallex*, 2021 WL 129803, at *6.  That other courts may have looked to the date of plaintiff's injury when determining alter-ego *liability* for certain purposes is irrelevant.

Indeed, like Crystallex, OIEG, Huntington Ingalls, and ACL, Rusoro strategically chose *not* to commence an action to hold PDVSA liable on its judgment. Instead, it commenced an ancillary enforcement proceeding against the Republic to collect on its judgment and filed a motion for a writ of attachment *fieri facias* under Fed. R. Civ. P. 69, seeking the "limited finding … that the specific property at issue [the PDVH shares] though nominally held in the name of a third party [PDVSA] is, *at this time*, really property of the judgment debtor," the Republic. *Crystallex I*, 333 F. Supp. 3d at 394 (brackets omitted) (emphasis added). To make that "limited finding" as to who owns the PDVH shares "*at this time*," the Court must consider facts as they exist at the time of the attachment motion and up to when the property is actually attached, just as the Court held.

Rusoro's argument that the time of its "injury" in 2011 is the "pertinent time" contradicts the nature of the action it chose to commence and the relief it seeks. The time of "injury" is irrelevant to whether the property currently belongs to the judgment debtor. Rusoro is seeking only to *attach property currently owned* by the Republic, rather than to *establish substantive liability* against PDVSA. Rusoro cannot execute on a judgment against the Republic by attaching property that the Republic purportedly owned at the time of Rusoro's "injury" but no longer owns at the time of attachment. *See Crystallex I*, 333 F. Supp. 3d at 392 n.9 (noting that because Crystallex's alter-ego theory was intended to establish *ownership of a particular asset* rather than *liability for a judgment*, "if the Republic were to sell PDVSA before the Court rendered its judgment, Crystallex would have no redress against PDVSA"). Property can only be attached if it is property of the debtor at the time the writ is served. *See Crystallex II*, 932 F.3d at 138 (citing 8 Del. C. § 324(a)); *Aurelius Cap. Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009) (holding that, to attach property subject to the FSIA by invoking the

13

exceptions in 28 U.S.C. § 1610, "the property that is subject to attachment and execution must be 'property in the United States of a foreign state' … *at the time* the writ of attachment or execution is issued"); *Calderon–Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 400 (S.D.N.Y. 2011) ("For the accounts at respondent banks to be attachable [under the TRIA and section 1610(g)], then, North Korea or one of its agencies or instrumentalities must actually own it."); *cf. Bramble Transp., Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97, 100 (Del. Super. Ct. 1971), *aff'd* 294 A.2d 104 (Del. 1972) (a writ of attachment "cannot be properly levied in a case where a defendant corporation has no attachable interest in the subject of the attachment as of the date of attachment").  And the only way the PDVH shares could belong to the Republic when the writ is served is if PDVSA were the Republic's alter ego at that time.  The Court has to evaluate that question at the time it decides whether to issue and serve the writ, which is the time between the filing of the motion and the order to issue and serve the writ (or the order denying the motion).

Rusoro's reliance upon liability-shifting cases is misplaced, especially given the Third Circuit's holding in *Crystallex II* that "*Bancec* does not require a connection between a sovereign's extensive control of its instrumentality and the plaintiff's injury."  932 F.3d at 143. Whatever the pertinent time may be for attributing Venezuela's substantive liability on Rusoro's judgment to PDVSA, Rusoro does not and cannot seek to impose liability on PDVSA in this attachment action.  Accordingly, there is no reasonable basis for Rusoro to dispute the Court's holding that the "pertinent time" for the alter-ego determination in this judgment enforcement proceeding runs from the time the attachment motion was filed (here, February 9, 2022) until the writ is issued and served (or the attachment motion is denied).  Whether PDVSA can be considered Venezuela's alter ego during that time period was not litigated or decided in

14

*Crystallex I.*  Thus, the Court's limited alter-ego ruling in *Crystallex I* cannot be given collateral estoppel effect in this proceeding.

### B.    Actions of the Unrecognized Maduro Regime Are Irrelevant Under *Bancec*

Like other creditors of the Republic, Rusoro relies primarily upon the actions of the illegitimate Maduro regime as "evidence" that since August 2018, PDVSA has remained the Republic's alter ego under *Bancec*.  *See* D.I. 4-1 at 12-22, 28-32.  PDVSA incorporates by reference the arguments made in its previously-filed briefs in *OIEG*, *Northrop*, and *ACL*.  *See* note 2, *supra*.  As PDVSA explained in those briefs, reliance upon actions of the unrecognized Maduro regime is untenable under this Court's ruling that the "relevant portion of PDVSA … is the property in the U.S."  *Crystallex*, 2019 WL 6785504, at *7.  Here, there is no dispute that: (i) the PDVH shares—the "specific property at issue," *Crystallex I*, 333 F. Supp. 3d at 394—are located in the U.S.; (ii) only the PDVSA *ad hoc* board has any rights or interests in the PDVH shares, *see Jiménez*, 250 A.3d at 820; and (iii) the Maduro regime has no control over the PDVSA *ad hoc* board and no rights or interests in the PDVH shares.  Thus, the actions of the Maduro regime with respect to PDVSA and its property *outside of the U.S.* are irrelevant.

Reliance upon actions of the outlaw Maduro regime is also barred by the political question doctrine and black letter law governing Executive Branch recognition and non-recognition of sovereigns, which make clear that the *only* relationship that is legally relevant to the Attachment Motion is that between the Interim Government and the PDVSA *ad hoc* board, the entity that owns the specific property that Plaintiff seeks to attach.  *See, e.g.*, *Zivotofsky v. Kerry*, 576 U.S. 1, 18-19 (2015); *Pfizer v. Government of India*, 434 U.S. 308, 319-20 (1978); *United States v. Pink,* 315 U.S. 203, 229 (1942); *Guaranty Tr. Co. v. United States*, 304 U.S. 126, 137-38 (1938); *United States v. Belmont*, 301 U.S. 324, 328-30 (1937); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944); *Nat'l Union Fire Ins. Co. v. Republic of China*, 254 F.2d 177, 186 (4th

Cir. 1958); *Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, 1003-04 (D.C. Cir. 1951); *Crystallex*, 2019 WL 6785504 at *7; *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 672 (S.D. Fla. 1988).  Rusoro's invitation to this Court to decide "[w]ho is the sovereign, *de jure* or *de facto*," of Venezuela would violate the political question doctrine.  *Zivotofsky*, 576 U.S. at 22 (quotation marks omitted); *Jiménez*, 250 A.3d at 831.

### C.  Plaintiff's Allegations Concerning the Interim Government Are Insufficient to Rebut the *Bancec* Presumption of Separateness

As a fallback, Plaintiff relies upon the same sparse and conclusory assertions as other creditors to argue that "even if the Court were to credit Mr. Guaidó as the legitimate ruler of Venezuela, it is clear that even he has tried to assert domination and control over PDVSA's assets and views it as an organ of the state."  D.I. 4-1 at 22-25, 33.  PDVSA incorporates by reference the arguments made in its previously-filed briefs in *OIEG*, *Northrop*, and *ACL*.  *See* note 2, *supra*.  As PDVSA explained in those briefs, looking at the facts as they exist today, Plaintiff has not shown and cannot show that the Interim Government exercises the extensive day-to-day control over PDVSA necessary to satisfy *Bancec*.  Since February 2019, when Interim President Guaidó appointed PDVSA's *ad hoc* board, the *ad hoc* board's actions have made clear that PDVSA operates as an independent economic entity, subject only to the ordinary control and oversight exercised by a sole shareholder and government regulator.  *See, e.g.*, *Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 55-56 (2d Cir. 2021); *GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*, 822 F.3d 598, 606 (D.C. Cir. 2016); *Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1072-74 (9th Cir. 2002); *UAB Skyroad Leasing v. OJSC Tajik Air*, No. 20-cv-00763 (APM), 2021 WL 254106, at *7-9 (D.D.C. Jan. 26, 2021).  Indeed, because of measures implemented by the Interim Government and the *ad hoc* board of PDVSA to separate the Interim Government

from the operations of PDVSA, the central facts the Third Circuit and this Court relied upon to

pierce PDVSA's corporate veil in *Crystallex I & II* no longer hold true and no longer

characterize the current relationship between the Republic and PDVSA.  *See generally* Brewer-

Carías Decl.; Medina Decl.  Those changed circumstances instead compel a finding that PDVSA

is a legally separate instrumentality whose sovereign immunity cannot be abrogated.

## II.      The Attachment Motion Must Be Denied Under Delaware Law

PDVSA incorporates by reference the arguments made in its previously-filed briefs in the

Related Cases.  *See* note 2, *supra*.  As PDVSA explained in those briefs, even if the Court

determines that Plaintiff has met the *Bancec* test for purposes of establishing the Court's

jurisdiction and PDVSA's lack of sovereign immunity, the Attachment Motion still must be

denied because Delaware law, applicable under Federal Rule 69(a), *see Schreiber v. Kellogg*, 50

F.3d 264, 267 (3d Cir. 1995), precludes the issuance of a writ seeking to attach and execute upon

PDVSA's shares in PDVH.

Courts have consistently held that ordinary state law rules determine whether a foreign

state's non-immune assets are subject to attachment in aid of execution under Rule 69(a).  *See*

*Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 140 (2014); *Peterson v. Islamic*

*Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010); *EM Ltd. v. Republic of Argentina*, 473

F.3d 463, 474 n.10 (2d Cir. 2007); *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d

Cir. 1996).  While the federal common-law *Bancec* rule determines whether PDVSA is immune

from jurisdiction under the FSIA, Rule 69—which has the force of a statute, *Winston & Strawn*

*v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016)—"requires that state law controls execution

proceedings absent express statutory authority, not federal common law."  *Hendricks & Lewis v.*

*Clinton*, 766 F.3d 991, 996 (9th Cir. 2014).  Rule 69(a) is not displaced when the judgment

debtor is a foreign state.  *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 140 (2014).

To hold otherwise would grant foreign-state-owned corporations *fewer protections* than privately owned corporations—an affront that the Supreme Court hardly could have intended.  Indeed, in *Cassirer v. Thyssen-Bornemisza Foundation*, the Supreme Court confirmed earlier this year that where a sovereign is not entitled to immunity, it must be treated "just as a private party would be" and state law must be applied in the same manner as it would in a similar case involving a private party.  142 S. Ct. 1502, 1510 (2022) (citing 28 U.S.C. § 1606).

Under Delaware law, a judgment creditor can seek to attach shares of stock in a corporation only if, among other things, the judgment debtor is listed on the books of the corporation as the record owner of the shares, which is not the case here. *See* 8 Del. C. § 324(a). The only exception to this requirement is if Plaintiff shows "that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors."  *Crosse*, 836 A.2d at 497; *see also Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686–87 (Del. 1959).  In other words, "Delaware law requires showing fraud – not just extensive control – to seize the property of a non-debtor like PDVSA."  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela.*, 24 F.4th 242, 247-48 (3d Cir. 2022) (citing *Crosse*, 836 A.2d at 497). Plaintiff does not and cannot allege that such fraud exists in this case.  Accordingly, the Attachment Motion must be denied.

## III.    OFAC Sanctions Prohibit the Issuance of a Conditional Writ of Attachment

PDVSA incorporates by reference the arguments made in its previously-filed briefs in the Related Cases.  *See* note 2, *supra*.  As PDVSA explained in those briefs, OFAC regulations prohibit the grant of a "conditional" *fi fa* writ against the PDVH shares. The President has "blocked" the PDVH shares, and OFAC regulations prohibit "the enforcement of any . . . judgment . . . through . . . judicial process purporting to transfer or otherwise alter or affect property or interests in [blocked] property."  Exec. Order No. 13850, 83 Fed. Reg. 55,243

(Nov. 1, 2018); 31 C.F.R. § 591.407.   The regulations provide that forbidden "transfer[s]" include any "act or transaction" or "issuance, docketing, or filing of . . . any judgment, decree, attachment" or other "judicial … process or order" "the purpose, intent, or effect of which is to create . . . or alter, directly or indirectly, any right . . . or interest," including "contingent" interests, in blocked property.   31 C.F.R. §§ 591.309, 591.310.   Consistent with the plain language of the regulations, OFAC's authoritative guidance states that a specific license "is required" for "the purported creation of any … contingent or inchoate interests[] in blocked property."   U.S. Dep't of Treasury, *OFAC FAQs: General Questions, FAQ No. 808* (Dec. 9, 2019)   (FAQ   808),   https://home.treasury.gov/policy-issues/financial-sanctions/faqs/808;   *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-18 (2019).   Because Plaintiff's requested relief would create a prohibited contingent interest in the PDVH shares, and would alter or affect PDVSA's interest in the PDVH shares, it is prohibited by OFAC regulations.

## IV.   OFAC Sanctions Prohibit Registration of a Judgment in this Court Under 28 U.S.C. § 1963

PDVSA incorporates by reference the arguments made in its previously-filed briefs in *Phillips* and *Red Tree*.   As PDVSA explained in those briefs, OFAC regulations prohibit, absent a specific license, "the issuance, docketing, or filing of … any judgment … ."   *See* 31 C.F.R. § 591.310.   Further, under 28 U.S.C. § 1962 and Delaware law, registration of a judgment in Delaware automatically creates a prohibited judgment lien on any real property that the judgment debtor owns or may acquire in Delaware.   *See* Nos. 22-mc-68-LPS & 22-mc-69-LPS, D.I. 10 at 13-14, D.I. 14 at 1-2. Thus, a specific license was required *before* Plaintiff registered its judgment with the Court under § 1963.   Because Plaintiff does not have such a license, its Registered Judgment should be vacated as "null and void."   31 C.F.R. § 591.202; *see also Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 361-62 (11th Cir. 1984) (license required

before "ent[ry] [of] any order or judgment that can be the basis for a [prohibited] transfer of property.").

## V.     The Attachment Motion Is Not Justiciable

PDVSA incorporates by reference the arguments made in its previously-filed briefs in the Related Cases. *See* note 2, *supra*. As PDVSA explained in those briefs, an OFAC license is required, or the sanctions must be lifted, for any judgment creditor of PDVSA or the Republic to be granted the ultimate relief that they seek—attachment of the PDVH shares. And there is no guarantee that OFAC will ever grant the requisite specific license or that the sanctions will ever be lifted. The Attachment Motion, therefore, does not satisfy the justiciability requirements of Article III, including because the requested relief would not redress Plaintiff's injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). Instead, it remains "merely speculative" that Plaintiff's asserted injury would ever be "redressed by" a conditional writ of attachment whose benefit to Plaintiff may never materialize. *Id.* at 561. Likewise, the speculative nature of these issues also creates a ripeness problem, as resolving the questions that come with issuing a writ of attachment here will be an academic exercise that provides no relief unless an OFAC license is issued or the sanctions regime changes. *See Trump v. New York*, 141 S. Ct. 530, 535 (2020).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the Attachment Motion for lack of jurisdiction under the FSIA, vacate the Registered Judgment, and deny Plaintiff's requested relief.

HEYMAN ENERIO GATTUSO & HIRZEL LLP

/s/ Samuel T. Hirzel, II

OF COUNSEL:

Joseph D. Pizzurro
Julia B. Mosse
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
jmosse@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Dated: October 28, 2022

Samuel T. Hirzel, II (#4415)
Aaron M. Nelson (#5941)
Jamie L. Brown (#5551)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
anelson@hegh.law
jbrown@hegh.law

*Attorneys for Intervenor Petróleos de Venezuela, S.A.*