# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

|  |  |
|---|---|
| RUSORO MINING LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 21-mc-00481-LPS |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS* AND BRIEF IN OPPOSITION TO PDVSA'S CROSS-MOTION TO DISMISS AND TO <u>VACATE THE REGISTERED JUDGMENT</u>

R. Craig Martin (DE Bar No. 005032)

DLA Piper LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE 19801
Tel: (302) 468-5655
Fax: (302) 778-7834
*Craig.Martin@us.dlapiper.com*

James E. Berger
Charlene C. Sun
Joshua S. Wan
Charlotte M. Westbrook

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4715
Fax: (212) 884-8715
*James.Berger@us.dlapiper.com*
*Charlene.Sun@us.dlapiper.com*
*Joshua.Wan@us.dlapiper.com*
*Charlotte.Westbrook@us.dlapiper.com*

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.   ARGUMENT .................................................................................................... 1

    A.   PDVSA's Cross-Motion Is Procedurally Improper ............................... 1

        1.   PDVSA Has Submitted No Evidence in These Proceedings ..................... 1

        2.   This Court Should Disregard PDVSA's Arguments "Incorporated by Reference" ................................................................................ 2

    B.   PDVSA Continues To Be the Alter Ego of Venezuela ............................ 3

        1.   The Totality of the Circumstances Under *Bancec* Warrants Consideration of the Full Factual Record ................................... 3

        2.   Acts of the Maduro Regime Are Relevant To the *Bancec* Extensive-Control Inquiry ........................................................... 4

              a.   PDVSA Mischaracterizes Rusoro's Claim In an Attempt To Preclude Consideration of the Acts of the Maduro Regime ........................................................................ 4

              b.   PDVSA Does Not Dispute That, When Considering the Acts of the Maduro Regime, PDVSA Continues To Be the Alter Ego of Venezuela ................................................. 6

              c.   Consideration of the Acts of the Maduro Regime Is Not Foreclosed By the Political Question Doctrine Or Other Law Applicable To Executive Branch Recognition of Sovereigns ................................................................... 7

        3.   Even if Identified Solely With the Guaidó Government, Venezuela Extensively Controls PDVSA ................................................... 10

        4.   Alternatively, the Time Pertinent To the *Bancec* Extensive-Control Inquiry Is the Time of Plaintiff's Underlying Injury ............... 14

    C.   Federal Law Governs the Alter Ego Analysis ..................................... 15

    D.   OFAC Sanctions Do Not Bar Adjudication of the Execution Motion ................. 17

    E.   The Execution Motion Is Justiciable ................................................. 18

        1.   The Execution Motion Is Ripe For this Court's Review ........................ 18

        2.   Rusoro Has a Redressable Injury .................................................... 19

    F.   OFAC Sanctions Do Not Require Vacatur of the Judgment ................................ 19

II.  CONCLUSION ................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACL1 Invs. Ltd., et al. v. Bolivarian Republic of Venezuela*,
No. 21-mc-46-LPS, D.I. 22 (D. Del. Jan. 21, 2022) .......................................................4, 7, 11

*Banque de France v. Equitable Trust Co.*,
33 F.2d 202 (S.D.N.Y. 1929)............................................................................................9

*Bayer Intell. Prop. GmbH v. CAP IM Supply, Inc.*,
No. 17-CV-591-RGA, 2018 WL 1517688 (D. Del. Mar. 28, 2018) .........................................2

*In re Bayshore Ford Truck Sales, Inc.*,
471 F.3d 1233 (11th Cir. 2006) ........................................................................................1

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
447 F.3d 411 (5th Cir. 2006) ......................................................................................10, 15

*County Sec. Agency v. Ohio Dep't of Commerce*,
296 F.3d 477 (6th Cir. 2002) ...........................................................................................1

*Crestwood Capital Corp. v. Andes Indus. Inc.*,
2019 WL 6726293 (D. Ariz. Dec. 11, 2019) ......................................................................16

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
333 F. Supp. 3d 380 (D. Del. 2018)............................................................................. *passim*

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019)...................................................................................... *passim*

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
No. CV 17-MC-151-LPS, 2021 WL 129803 (D. Del. Jan. 14, 2021) ......................................4

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
No. 15-CV-1082-LPS, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ..............................3, 5, 15

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983)..................................................................................................16, 19

*Flintkote Co. v. Aviva P.L.C.*,
C.A. No. 13-103-LPS, 2015 WL 1405922 (D. Del. Mar. 25, 2015) ....................................2, 3

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
905 F.2d 438 (D.C. Cir. 1990) .......................................................................................16

*Gradel v. Piranha Cap., L.P.*,
   495 F.3d 729 (7th Cir. 2007) ................................................. 1

*Guaranty Tr. Co. v. United States*,
   304 U.S. 126 (1938) ................................................. 8

*Jarvey v. Libyan Inv. Auth.*,
   840 F.3d 248 (5th Cir. 2016) ................................................. 16

*Jiménez v. Palacios*,
   250 A.3d 814 (Del. Ct. Ch. Aug. 2, 2019), *aff'd*, 237 A.3d 68 (Del. 2020) ......................... 5, 6

*Latvian State Cargo & Passenger S.S. Line v. McGrath*,
   188 F.2d 1000 (D.C. Cir. 1951) ................................................. 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................. 18

*Nat'l Oil Corp. v. Libyan Sun Oil Co.*,
   733 F. Supp. 800 (D. Del. 1990) ................................................. 17

*Nat'l Union Fire Ins. Co. v. Republic of China*,
   254 F.2d 177 (4th Cir. 1958) ................................................. 8

*Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*,
   No. 19-mc-257-LPS, D.I. 32 (D. Del. Apr. 2, 2021) ................................ 4, 11

*Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense Of The Republic Of Venezuela*,
   20-mc-257 (D. Del. Mar. 19, 2021), D.I. 29 ................................................. *passim*

*OI Eur. Grp., B.V. v. Bolivarian Republic of Venezuela*,
   No. 19-mc-290-LPS, D.I. 65 (D. Del. Apr. 2, 2021) ................................ 4, 11

*OI European Group B.V. v. Bolivarian Republic Of Venezuela*,
   19-mc-290 (D. Del. Feb. 16, 2021), D.I. 46 ................................................. 2

*OI European Grp. B.V. v. Bolivarian Rep. of Venezuela*,
   19-mc-290 (D. Del. Mar. 2, 2022), D.I. 109 ............................... 17, 18, 19, 20

*Pfizer v. Gov't of India*,
   434 U.S. 308 (1978) ................................................. 8

*Red Tree Investments, LLC v. Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*,
   22-mc-68-LPS (D. Del. Apr. 28, 2022), D.I. 15 ................................................. *passim*

iii

*Republic of Iraq v. ABB AG*,
    920 F. Supp. 2d 517 (S.D.N.Y. 2013), *aff'd*, 768 F.3d 145 (2d Cir. 2014) .........................8, 9

*Republic of Panama v. Air Panama Internacional, S.A.*,
    745 F. Supp. 669 (S.D. Fla. 1988) ...........................................................................8

*Salimoff v. Standard Oil Co.*,
    262 N.Y. 220 (1933) ...........................................................................................9, 10

*Sokoloff v. Nat'l City Bank*,
    239 N.Y. 158 (1924) .................................................................................................9

*United States v. Belmont*,
    301 U.S. 324 (1937) .................................................................................................8

*United States v. Pink*,
    315 U.S. 203 (1942) .................................................................................................8

*Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*,
    965 F.2d 1375 (5th Cir. 1992) .................................................................................10

*Weinstein v. Islamic Republic of Iran*,
    831 F.3d 470 (D.C. Cir. 2016) ................................................................................16

*Zivotofsky v. Kerry*,
    576 U.S. 1 (2015) .....................................................................................................8

**Statutes**

8 Del. C. § 324 ..............................................................................................................16

10 Del. C. § 5031 ..........................................................................................................16

28 U.S.C. § 1610(a) .........................................................................................................5

**Other Authorities**

31 C.F.R. § 591.202 .......................................................................................................20

Federal Rules of Civil Procedure Rule 69(a)(1) ...........................................................15

Local Rule 7.1.3(C)(1)(E) ................................................................................................1

Restatement (Third) of Foreign Relations Law of the United States § 203,
    Comment a (1986) ....................................................................................................8

Plaintiff Rusoro Mining Limited ("Rusoro") respectfully submits this reply brief in further support of its motion (the "Execution Motion," D.I. 2) for an order: (i) finding that Petróleos de Venezuela, S.A. ("PDVSA") is the alter ego of the Bolivarian Republic of Venezuela ("Venezuela"); and (ii) authorizing the Clerk of Court to issue and serve a conditional writ of attachment *fieri facias* against the shares of PDV Holding Inc. ("PDVH") located in this District, and in opposition to PDVSA's cross-motion to dismiss for lack of jurisdiction and to vacate the judgment in favor of Rusoro against Venezuela (the "Judgment") (the "Cross-Motion," D.I. 33).[1]

## I.    ARGUMENT

### A.    PDVSA's Cross-Motion Is Procedurally Improper

#### 1.    PDVSA Has Submitted No Evidence in These Proceedings

PDVSA has submitted *no evidence* to rebut any of the factual assertions set forth in the Execution Motion.  Indeed, PDVSA's "statement of facts" regarding the relationship between Venezuela and PDVSA does not reference a single document in the record.  Instead, PDVSA's "evidence" in support of its Cross-Motion consists of references to three declarations submitted in two other separate proceedings.  D.I. 33 at 7-8.[2]

PDVSA's cavalier approach to evidence flouts procedural rules that are not mere litigation formalities, but are designed to ensure fairness of proceedings.  PDVSA's passing references to declarations filed in separate proceedings is plainly insufficient to rebut the voluminous evidence

---

[1]    PDVSA argues in a footnote that "because PDVSA was never properly served, the Court also lacks personal jurisdiction over PDVSA."  D.I. 33 at 1, n.1.  Although this issue has not been directly addressed in the Third Circuit, the majority view among federal circuit courts that have ruled on this question is that a party that intervenes consents to the jurisdiction of the court as a matter of law.  *See Gradel v. Piranha Cap., L.P.*, 495 F.3d 729, 731 (7th Cir. 2007) (holding that intervening party submitted itself to the jurisdiction of the court); *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233 (11th Cir. 2006) (same); *County Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477 (6th Cir. 2002) (same).  But even if PDVSA's intervention did not itself confer personal jurisdiction on the Court, it is undisputed that PDVSA did not raise an objection to personal jurisdiction in its Motion to Intervene, D.I. 14, and therefore PDVSA has waived any challenge to personal jurisdiction.

[2]    Local Rule 7.1.3(C)(1)(E) requires that briefs must contain "[a] concise statement of facts, with supporting references *to the record*, presenting the background of the questions at issue." (emphasis added).

that Rusoro submitted in support of its Execution Motion.  This Court should reject PDVSA's improper attempt to rely on factual evidence submitted in separate proceedings and consider all of the factual assertions in Rusoro's Motion to be unrebutted.  *See Bayer Intell. Prop. GmbH v. CAP IM Supply, Inc.*, No. 17-CV-591-RGA, 2018 WL 1517688, at *11 n.4 (D. Del. Mar. 28, 2018) (rejecting a party's arguments after "find[ing] that incorporating multiple pages of an expert declaration by reference is not an adequate substitute for briefing responses to arguments raised by the opposing party").

## 2.    This Court Should Disregard PDVSA's Arguments "Incorporated by Reference"

Likewise, PDVSA's patently improper approach of "incorporat[ing] by reference" "all of the arguments made in its prior briefs," D.I. 33 at 2 n.2, flagrantly disregards the procedural rules governing the form and content of briefs in this District.  As this Court itself has repeatedly held, it is inappropriate for parties to circumvent page limitations by incorporating substantive arguments made in earlier papers filed in the same proceeding, to say nothing of arguments that the party has made in *entirely separate proceedings*.  *See, e.g., Flintkote Co. v. Aviva P.L.C.*, C.A. No. 13-103-LPS, 2015 WL 1405922, at *1 n.2 (D. Del. Mar. 25, 2015) (declining to consider arguments in earlier papers that a party attempted to incorporate by reference into summary judgment briefing because "this practice effectively subverts the briefing page limits").  Rather than seek the Court's leave to file an enlarged brief, as it has done in cases involving other creditors,[3] PDVSA, remarkably, "incorporates" arguments made in *13 briefs in 5 different cases*. What is more, rather than cite to any specific pages of these 13 briefs (which amount to over 300

---

[3]    *See, e.g., ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*, 21-mc-00046 (D. Del. Jan. 11, 2022), D.I. 20; *Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense Of The Republic Of Venezuela*, 20-mc-257 (D. Del. Mar. 19, 2021), D.I. 29; *OI European Group B.V. v. Bolivarian Republic Of Venezuela*, 19-mc-290 (D. Del. Feb. 16, 2021), D.I. 46.

pages of briefing), PDVSA repeatedly makes vague references to "arguments made in its previously-filed briefs." D.I. 33 at 16. This tactic plainly circumvents this Court's page limitations and renders it impossible for Rusoro to respond within those same page limitations. As in *Flintkote*, this Court should disregard PDVSA's arguments "incorporated by reference" here.

**B.   PDVSA Continues To Be the Alter Ego of Venezuela**

      **1.   The Totality of the Circumstances Under *Bancec* Warrants Consideration of the Full Factual Record**

As this Court previously determined, "*Bancec* did not establish a mechanical formula for courts to apply. It is appropriate for the Court to consider the *totality of circumstances* that either side wishes to present." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* ("*Crystallex I*"), 333 F. Supp. 3d 380, 411 (D. Del. 2018). This Court has made abundantly clear that the "totality of the circumstances" test under *Bancec* warrants consideration of the full factual record—*i.e.*, evidence from *any* time period up to the time the attachment motion is filed and the subsequent issuance and service of that writ. *Id.* (finding that "the Court must consider all of the evidence in the record"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* ("*Crystallex II*"), 932 F.3d 126, 144 (3d Cir. 2019) (rejecting Venezuela's argument that the pertinent time is "the moment the writ is issued" and explaining that the "normal course" is for the Court to "render [its] decision based on the record before the district court"); *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-CV-1082-LPS, 2019 WL 6785504, at *8 (D. Del. Dec. 12, 2019) (finding that OIEG had failed to meet its burden of proof where it relied only on the record created in the *Crystallex* proceeding and failed to present any evidence of its own).

That the record has now been expanded to include events post-August 2018 does not mean, as PDVSA would like, that the facts upon which the Court in *Crystallex* relied lose any force, or that they are somehow undone. Contrary to PDVSA's assertion, the "filing of the motion seeking

a writ of attachment and the subsequent issuance and service of that writ" simply marks the *end* point in the analysis. Indeed, "historical events preceding the filing of the motion for a writ" may have "a substantial or perhaps dispositive impact" on "whether an alter ego relationship exists in the pertinent period." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 17-MC-151-LPS, 2021 WL 129803, at *6 n.4 (D. Del. Jan. 14, 2021). As set forth below, the evidence demonstrates that the Guaidó administration has largely followed in the footsteps of the Maduro regime in extensively controlling the day-to-day operations of PDVSA, creating an unbroken record of governmental dominance over PDVSA.

> ### 2. Acts of the Maduro Regime Are Relevant To the *Bancec* Extensive-Control Inquiry

At the outset, and for the reasons explained above, *see supra* Section I.A.2, PDVSA is not permitted to "incorporate[] by reference the arguments made in its previously-filed briefs in *OIEG*, *Northrop*, and *ACL*"[4] here. *See* D.I. 33 at 15-16. However, PDVSA's arguments—whether confined to those set forth on the face of its brief or read to include arguments advanced in other cases and (impermissibly) incorporated here—also fail on their merits for the reasons below.[5]

> #### a. PDVSA Mischaracterizes Rusoro's Claim In an Attempt To Preclude Consideration of the Acts of the Maduro Regime

In its Execution Motion, Rusoro explained that recognition of the Guaidó government is legally irrelevant for the purpose of making an alter ego finding. D.I. 4-1 at 32. Now, PDVSA

---

[4]  As to the issue of the relevance of the actions of the unrecognized Maduro Regime under *Bancec*, PDVSA devotes 11 pages in its Cross-Motion filed in OIEG, and 6 pages in its Cross-Motion filed in ACL. *See OI Eur. Grp., B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290-LPS, D.I. 65 (D. Del. Apr. 2, 2021), at 9-20; *ACL1 Invs. Ltd., et al. v. Bolivarian Republic of Venezuela*, No. 21-mc-46-LPS, D.I. 22 (D. Del. Jan. 21, 2022), at 11-17. In its Cross-Motion filed in *Northrop*, PDVSA similarly (and impermissibly) incorporated its submissions filed in *OIEG*. *See Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 19-mc-257-LPS, D.I. 32 (D. Del. Apr. 2, 2021), at 16 n.8.

[5]  Rusoro maintains that this Court should disregard PDVSA's arguments "incorporated by reference" and reserves all rights related to the same. Rusoro nevertheless responds to certain of these arguments for completeness.

contends that reliance on the acts of the unrecognized Maduro regime is untenable under this Court's ruling that the "relevant portion of PDVSA … is the property in the US [*i.e.*, the PDVH shares]," D.I. 33 at 15 (citing *Crystallex*, 2019 WL 6785504, at *7), and on the basis that (i) the PDVH shares are located in the U.S., (ii) only the PDVSA *ad hoc* board has any rights or interests in the PDVH shares (*citing Jiménez v. Palacios*, 250 A.3d 814, 820 (Del. Ct. Ch. Aug. 2, 2019), *aff'd*, 237 A.3d 68 (Del. 2020)), and (iii) the Maduro regime has no control over the PDVSA *ad hoc* board and no rights or interests in the PDVH shares.  D.I. 33 at 15.  PDVSA is wrong and misrepresents both the *Crystallex* and *Jiménez* decisions.

The Court's December 12, 2019, decision in *Crystallex* referred to the PDVH shares as the "relevant portion of PDVSA" *not* because the alter ego analysis is conducted asset by asset, but because writs must be directed to "specifically identified property," *Crystallex I*, 333 F. Supp. 3d at 424, and whether the "specified property" is "used for a commercial activity in the United States" is one of the statutory exemptions to execution immunity under 28 U.S.C. § 1610(a).  Indeed, this Court has repeatedly confirmed that the *Bancec* alter ego analysis is *entity*, and not property, based. *Crystallex I*, 333 F. Supp. 3d at 414 ("*PDVSA* may be deemed the alter ego of *Venezuela*."); *Crystallex*, 2019 WL 6785504, at *8 ("[A]ny creditor seeking to place itself in a situation similar to Crystallex will have to prove that *PDVSA* is and/or was the *Republic's* alter ego.").

Likewise, the *Jiménez* decision simply stands for the proposition that the political question and act of state doctrines require the court to "accept[] as binding the U.S. President's recognition of the Guaidó government and assume[] the validity of the Guaidó government's appointments to the PDVSA board." *Jiménez*, 250 A.3d at 820.  *Jiménez* concerned an action brought by former directors of PDVH, CITGO Holding, Inc., and CITGO Petroleum Corporation (the "CITGO Entities") seeking a declaration that they comprise the rightful board of directors, notwithstanding

that the Guaidó government had appointed the *ad hoc* board which, in turn, had reconstituted the boards of the CITGO Entities.  *Id.* at 819.  While the Court was obliged to assume the validity of the Guaidó government's appointment of the *ad hoc* board, it did not go so far as to find that only the PDVSA *ad hoc* board *itself* has any rights or interests in the PDVH shares, as PDVSA suggests. D.I. 33 at 15.  Rather, the Court acknowledged that *PDVSA* (and not the *ad hoc* board) owns the PDVH shares.[6]  *Jiménez*, 250 A.3d at 822 ("PDVSA is the sole stockholder of PDV Holding"). And, as explained below, PDVSA has not rebutted any of Rusoro's evidence showing that *PDVSA* is controlled by the Maduro regime (*see* Section I.B.2.b), whose actions—despite its unrecognized status—can be attributed to the Venezuelan State (*see* Section I.B.2.c).

Accordingly, this Court is not foreclosed from considering the acts of the Maduro regime by virtue of the fact that Rusoro's Execution Motion is directed at property in the U.S.

### b.   PDVSA Does Not Dispute That, When Considering the Acts of the Maduro Regime, PDVSA Continues To Be the Alter Ego of Venezuela

In its Cross-Motion, PDVSA does not (and cannot) dispute that outside of the U.S., PDVSA operates just as it did before January 2019.  Rather, its sole approach is to argue that the acts of the Maduro regime in Venezuela are irrelevant under *Bancec*.  D.I. 33 at 15-16.  PDVSA has not sought to challenge *any* of the evidence presented by Rusoro making clear that (1) Venezuela retains economic control of PDVSA (*see* D.I. 4-1 at 8-9, 15-17, 20-21, 28-29), (2) PDVSA's profits go to Venezuela (*see* D.I. 4-1 at 17-20, 29), (3) Venezuelan State officials manage PDVSA and are

---

[6]    The Court in *Jiménez* also specifically referred to the Third Circuit's decision in *Crystallex II*, 932 F.3d at 126 (affirming the ruling that allowed Crystallex to seize shares of PDVH to satisfy its arbitral award), noting that the *Crystallex II* "ruling might affect ownership of these entities, but it does not alter the validity of the acts at issue in this case [*i.e.*, the Guaidó government's appointment of the *ad hoc* board]." *Jiménez*, 250 A.3d at 822 n.5.  The reverse is thus also true.  Just because the Court in *Jiménez* found that the Guaidó government's appointment of the *ad hoc* board was valid does not affect the alter ego analysis required to establish Rusoro's right to likewise seize shares of PDVH to satisfy its award.

closely involved in PDVSA's daily affairs (*see* D.I. 4-1 at 12-15, 29), (4) Venezuela is the real beneficiary of PDVSA's conduct (*see* D.I. 4-1 at 13-21, 29-30) and (5) adherence to separate entities would entitle Venezuela to benefits in the U.S. while avoiding its obligations (*see* D.I. 4-1 at 31).

Because the relevant inquiry here is whether *PDVSA* (not the *ad hoc* board) is the alter ego of *Venezuela* (not the Maduro regime or the Guaidó Government)—in respect of which acts of the unrecognized Maduro regime in Venezuela must be taken into account—PDVSA's acknowledgment that it cannot prevail on its Cross-Motion if the Maduro regime's acts are relevant is effectively dispositive of Rusoro's Execution Motion.

Moreover, PDVSA's actions up to the very date of this Reply evidence that it continues to act on behalf of the Venezuelan State.  As recently as September 2022, PDVSA, apparently in an exercise of sovereign authority, seized a minority stake in a key joint oil venture, Petrozamora, from GPB Global Resources, a private energy firm founded by former Gazprom PJSC officials, taking full control of the asset in an effort to "to increase supply for its domestic market."  Declaration of Charlene C. Sun, dated November 14, 2022 ("Second Sun Decl."), Ex. 5; Ex. 6.  Accordingly, the Court should determine that Venezuela extensively controls PDVSA within the meaning of *Bancec*.

### c. Consideration of the Acts of the Maduro Regime Is Not Foreclosed By the Political Question Doctrine Or Other Law Applicable To Executive Branch Recognition of Sovereigns

Nor is reliance on the acts of the Maduro regime barred by the political question doctrine, or other related doctrines cited by PDVSA.[7]  Recognition of a foreign government is a "formal acknowledgement" that "a particular regime is the effective government of a state."  Restatement (Third) of Foreign Relations Law of the United States § 203, Comment a, at 84 (1986).  Recognition

---

[7]     PDVSA also incorporates by reference its arguments in the other creditor cases concerning, for example, the act of state doctrine.  *See*, *e.g.*, *ACL1 Invs. Ltd.*, *et al. v. Bolivarian Republic of Venezuela*, No. 21-mc-46-LPS, D.I. 22 (D. Del. Jan. 21, 2022), at 13.  Again, notwithstanding Rusoro's position that this Court should disregard all of PDVSA's arguments "incorporated by reference," Rusoro responds to this argument for completeness.

entitles sovereigns to sue in U.S. courts, and benefit from sovereign immunity when they are sued. *Zivotofsky v. Kerry*, 576 U.S. 1, 11 (2015) (collecting cases).  However, lack of recognition of a foreign government does *not* prevent acts of that government from being attributed to the State.  *See Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517, 541 (S.D.N.Y. 2013), *aff'd*, 768 F.3d 145 (2d Cir. 2014) ("The legitimacy or illegitimacy of the Hussein Regime's rule does not affect whether the Regime's acts may be attributed to the Republic of Iraq … What matters is control.").

The political question doctrine simply bars the judiciary from deciding "[w]ho is the sovereign, *de jure* or *de facto*, of a territory."  *Id*. at 22.  The decisions cited by PDVSA, *see* D.I. 33 at 15-16, merely support the unremarkable propositions that (1) recognition of foreign governments is the prerogative of the Executive Branch, (2) only recognized foreign governments have standing to sue in U.S. courts, and (3) U.S. courts cannot recognize the *validity* of an unrecognized foreign regime's assertion of rights in, or transfer of *formal* legal title to, sovereign assets under the jurisdiction of U.S. courts.[8]

But Rusoro does not ask this Court to determine the *validity* of the Maduro regime's legal title to the PDVH shares in the U.S., nor does Rusoro request a writ based on any issued decree or transfer of legal title to those shares by the Maduro regime.  Rather, Rusoro asks this Court to

---

[8]   *See Zivotofsky*, 576 U.S. at 1 ("The President has the exclusive power to grant formal recognition to a foreign sovereign."); *Pfizer v. Gov't of India*, 434 U.S. 308, 319-20 (1978) ("[O]nly governments recognized by the United States [get] access to our courts."); *United States v. Pink*, 315 U.S. 203, 229 (1942) ("[O]bjections to recognition are to be addressed to the political department and not to the courts."); *Guaranty Tr. Co. v. United States,* 304 U.S. 126, 137-38 (1938) (only recognized governments have standing to sue in U.S. courts); *United States v. Belmont,* 301 U.S. 324, 330 (1937) (taking judicial notice that the assignment at issue was presumed valid as it was made by a U.S.-recognized government); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944) (acts of an unrecognized government cannot be used to "determine rights in property, subject to the jurisdiction of the examining court"); *Nat'l Union Fire Ins. Co. v. Republic of China*, 254 F.2d 177, 186 (4th Cir. 1958) (refusing to give effect to transfer of ships commandeered at sea); *Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, 1001-02 (D.C. Cir. 1951) (refusing to give effect to confiscation order of ships in New York harbor); *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 672 (S.D. Fla. 1988) ("[W]here property owned by a foreign government *is located in the United States* and two competing regimes claim to be the government which owns the property, recognition by the Executive Branch of one regime as the lawful foreign government conclusively establishes that government's title to the property.").

determine that *PDVSA* (the entity) is the alter ego of *Venezuela* (the State—not the Maduro regime). Only then need the Court consider the PDVH shares which are, indisputably, the indirect property of *PDVSA*.  And for the purposes of the first inquiry—*i.e.*, whether PDVSA is the alter ego of Venezuela—as noted above, courts have long accepted that acts of an unrecognized regime may be *attributed* to a State.  *See Republic of Iraq*, 920 F. Supp. 2d at 541.

Likewise, official recognition by the Executive Branch cannot blind courts to facts on the ground "if violence to fundamental principles of justice or to our own public policy might otherwise be done."  *Sokoloff v. Nat'l City Bank*, 239 N.Y. 158, 166 (1924).  *See also Banque de France v. Equitable Trust Co.*, 33 F.2d 202, 206 (S.D.N.Y. 1929) ("[T]he refusal of the political department to recognize a government should not be allowed to affect private rights which may depend upon proving the existing conditions in such state."); *Salimoff v. Standard Oil Co.*, 262 N.Y. 220, 226-227 (1933) (finding a decree of the unrecognized Soviet Union effective to pass title to oil located in Russian territory where "[t]o refuse to recognize that Soviet Russia is a government regulating the internal affairs of the country, is to give to fictions an air or reality which they do not deserve").

Nor does the Executive Branch itself turn a blind eye to the reality that *within Venezuela* PDVSA is still controlled by the Maduro regime.  As of March 2021, the Executive Branch advises U.S. courts that the Maduro regime remains in control of Venezuela and of PDVSA's operations.  *See* Second Sun Decl., Ex. 1 at 8 ("President Maduro remains in power in Venezuela, and in control of PDVSA.").  Indeed, for the purposes of its *own* foreign policy objectives, that is also how the Executive Branch operates in practice.  For example, as recently as October 2022, the Biden administration obtained the release of the Citgo 6—a group of Citgo's U.S.-based executives that had been imprisoned by the Maduro regime since November 2017 (*see* D.I. 4-1, at 18-20)— precisely as a result of its negotiations with the *Maduro regime* (not Guaidó's government) and *in*

*exchange for the release Maduro's relatives detained in the U.S.*  Declaration of Charlene C. Sun, dated February 9, 2022 ("First Sun Decl."), Exs. 70, 71; Second Sun Decl., Ex. 2.  Similarly, the Biden administration has recently negotiated directly with the Maduro regime to potentially resume oil exports to the U.S., including by sending a group of senior U.S. officials to Caracas to meet with the Maduro government in March 2022.  Second Sun Decl., Exs. 3, 4.  Thus, even the U.S. Executive Branch, despite its staunch support of the Guaidó Government, plainly recognizes the Maduro regime's firm grip on Venezuela, and on PDVSA.

Finally, that this Court must consider the facts on the ground is also consistent with the nature of the alter ego inquiry, the essence of which is the subjugation of form to facts.  *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) ("In making an alter ego determination, a court is concerned with reality and not form."); *Crystallex II*, 932 F.3d at 146 ("[T]he facts are paramount in determining when control is so extensive that entity separateness fades away as a legal distinction."); *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375, 1382 (5th Cir. 1992); *Crystallex I*, 333 F. Supp. 3d at 407-08 (noting Hugo Chávez's control of PDVSA since 2002; discounting formal Venezuelan decrees and legislation). To disregard the facts on the ground in such a factual inquiry as this one would elevate form over substance in a manner that contravenes established jurisprudence and "give[s] to fictions an air or reality which they do not deserve."  *Salimoff*, 262 N.Y. at 226-227.

### 3.    Even if Identified Solely With the Guaidó Government, Venezuela Extensively Controls PDVSA

Even were this Court to limit itself to considering only the acts of the Guaidó Government *within* the U.S. (which it should not for the reasons stated above, *see supra* Section I.B.2), the record demonstrates that extensive governmental control persists.  Again, PDVSA is not permitted

to "incorporate[] by reference" more than *thirty* pages of submissions on this topic[9] into a *single* paragraph here.[10]  *See* D.I. 33 at 15-16.  Taking PDVSA's argument on the face of what it has submitted in *this* brief—its assertions plainly fail.  Specifically, PDVSA's contention that the "*ad hoc* board's actions have made clear that PDVSA operates as an independent economic entity, subject only to the ordinary control and oversight exercised by a sole shareholder and government regulator," *see* D.I. 33 at 16, is utterly belied by the position adopted by the Guaidó administration that *every* PDVSA contract with a foreign national must be approved by the legislature consistent with Article 36 of the Transition Statute (which itself precludes the disposal of any funds belonging to PDVSA until after the Maduro regime relinquishes power)—a degree of day-to-day control over PDVSA that exceeds even what the Maduro regime exercised.  *See* First Sun Decl., Ex. 5, ¶ 22.

Consideration of PDVSA's arguments "incorporated by reference" gets PDVSA no further.  As shown below, Venezuela under Guaidó continues to control PDVSA:

***Factor 1: The level of economic control by the government***

- The Guaidó Government retains economic control over PDVSA by requiring legislature approval of every PDVSA contract with a foreign national, First Sun Decl., Ex. 5, ¶ 22, and by treating debts of PDVSA and Venezuela as functionally equivalent in debt renegotiation guidelines.  *See* First Sun Decl., Ex. 81.

- The website of the Guaidó-controlled National Assembly frequently contains updates on the status of both the *ad hoc* board and its subsidiary, CITGO, repeatedly referring to both as assets of the Venezuelan State.  First Sun Decl., Exs. 27, 90, 91, 98, 99, 100.

- To maintain control over PDVSA's assets, the Guaidó Government has sought to oversee

---

[9]   As to the issue of the sufficiency of the OIEG, Northop and ACL plaintiffs' allegations concerning the Interim Government to rebut the *Bancec* presumption of separateness, PDVSA devotes 9 pages in its Cross-Motion filed in OIEG, 14 pages in its Cross-Motion in *Northrop*, and 13 pages in its Cross-Motion filed in ACL.  *See OI Eur. Grp., B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290-LPS, D.I. 65 (D. Del. Apr. 2, 2021), at 20-28; *Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 19-mc-257-LPS, D.I. 32 (D. Del. Apr. 2, 2021), at 12-26; *ACL1 Invs. Ltd., et al. v. Bolivarian Republic of Venezuela*, No. 21-mc-46-LPS, D.I. 22 (D. Del. Jan. 21, 2022), at 17-30.

[10]   To the extent that PDVSA relies upon declarations submitted by witness statements and experts in other proceedings, Rusoro reserves the right to seek discovery from, and cross-examination of, such witnesses prior to this Court's determination of the Execution Motion.

litigation relating to PDVSA bonds.  First Sun Decl., Ex. 98.  On April 19, 2019, the Guaidó Government adopted a resolution that subjected PDVSA's legal representation to direct oversight by the "Special Prosecutor appointed by the President."  Second Sun Decl., Ex. 18; *see also* Second Sun Decl., Ex. 9 at 91:12-93:7.

- In litigation proceedings, in which PDVSA's litigation strategy was at the direction of the State, Second Sun Decl., Ex. 8, the *ad hoc* board describes PDVSA as having a "constitutionally prescribed role" in Venezuela to "manage the [Venezuelan] oil industry," including CITGO—the "'crown jewel' and most economically and strategically important foreign asset of national [Venezuelan] public interest."  Second Sun Decl., Ex. 7 at 31; *see also* Second Sun Decl., Ex. 9, at 109:14-18 (chairman of *ad hoc* board testifying: "That colloquial phrase of the crown jewels, what it tries to say is to emphasize the importance that that asset has to Venezuela, to the country and, of course, to PDVSA, who is going to administer everything that has to do with the reactivation of the industry").

- The Guaidó government's control over CITGO assets, through its management of PDVSA and its subsidiaries, has been so extensive that some within the Venezuelan government have called for a more robust separation by vesting management of CITGO in an independent trust.  Second Sun Decl., Ex. 24.

### Factor 2: Whether the entity's profits go to the government

- PDVSA's profits go to Venezuela, not only by virtue of Venezuela's status as PDVSA's lone shareholder, *Crystallex II*, 932 F.3d at 148, but also by the Guaidó Government's direct drawing of monies from PDVSA's subsidiaries in the U.S. and bypassing of PDVSA's corporate rights to the same.  *See* First Sun Decl., Exs. 79, 80.

- In a board presentation on the status of PDVSA's business, the *ad hoc* board confirmed that PDVSA funds are likewise used for the purpose of protecting the financial interests of the State, noting that the *ad hoc* board "authorized the use of resources up to the amount of USD 20 million for the payment of professional fees and legal expenses associated with the protection, recovery, and control of *Venezuelan assets* abroad," and notes that the source of funds is "receivables from PDVSA."  Second Sun Decl., Ex. 13, at 15.

### Factor 3: The degree to which government officials manage the entity or otherwise have a hand in its daily affairs

- The Guaidó Government manages and is closely involved in PDVSA's daily affairs by virtue of the Transition Statute, which gives "Guaidó and his appointees … unfettered authority to exercise considerable control over PDVSA, PDV Holding and Citgo."  First Sun Decl., Ex. 5, ¶ 19; *see also* D.I. 4-1 at 22-23.  In fact, after the *ad hoc* board was established, it regularly presented its activities to the National Assembly, even explicitly acknowledging the government's "total control" over PDVSA, PDVH, CITGO Holding, Inc., and CITGO Petroleum.  First Sun Decl., Ex. 91.

- The *ad hoc* board does not observe corporate formalities.  It has neither maintained a physical office nor hired any employees, Second Sun Decl., Ex. 14 ¶ 25, is uncompensated,

Second Sun Decl., Ex. 15, working solely for the "satisfaction of contributing to the rebuilding of the country" and "the main objective" of "return[ing] democracy to Venezuela, Second Sun Decl., Ex. 8, and has not published a single complete annual report, Second Sun Decl., Ex. 16.

- The *ad hoc* board is subservient to the State.  Louis Pacheco, former chairman of the *ad hoc* board, stated in a 2020 interview that the *ad hoc* board works toward "the main objective" of establishing the Guaidó government's effective control over Venezuela.  Mr. Pacheco also characterized the *ad hoc* board's role as supporting the National Assembly's desires in the ongoing legal proceedings over CITGO bonds.  Second Sun Decl., Ex. 8; *see also* Second Sun Decl., Ex. 9, at 19:2-7, 80:10-81:15.  At times, the total control Venezuela exercised over the *ad hoc* board restrained the board from making decisions it deemed best for PDVSA's governance.  Second Sun Decl., Ex. 8 (former chairman of *ad hoc* board noting that the *ad hoc* board felt constrained by "a country whose political and social situation makes it hard to make decisions," and adding that "sometimes the leadership itself does not let us work due to little things that go nowhere").

- The Venezuelan government exercises direct control over PDVSA subsidiaries in which it owns no shares.  For example, although Venezuela owns no shares in PDVH, Article 34(b)(3) of the Transition Statute requires PDVH to refrain from interacting with the Maduro regime.  Second Sun Decl., Ex. 12, art. 34(b)(3); *see also* Second Sun Decl., Ex. 9 at 23:6-19.  In July 2020, Guaidó appointed additional directors of both PDVSA's and CITGO's boards.  Second Sun Decl., Ex. 15; Second Sun Decl., Ex. 17.

- The Guaidó Government has maintained direct control over the *ad hoc* board.  In particular, the *ad hoc* board paid PDVSA's debts in May 2019 only after the Guaidó Government authorized such payments.  Second Sun Decl., Ex. 18; Second Sun Decl., Ex. 9, at 17:21-18:2; Second Sun Decl., Exs. 18, 20.  In October 2019, the *ad hoc* board stopped paying PDVSA's debts on instructions again from the Guaidó-controlled National Assembly.  Second Sun Decl., Ex. 13, at 12; Ex. 16, Ex. 22.

- In July 2021, the Guaidó Government leveraged CITGO as a political asset by placing National Assembly members and PDVSA executives on panels during a CITGO-sponsored private summit, and promising "B2B meetings with [Venezuelan] Government to discuss the future plans for the development of the oil and gas industry in Venezuela."  Second Sun Decl., Ex. 11.

- The Guaidó government has treated the liabilities of Venezuela and PDVSA as one.  Specifically, the Guaidó government intends to treat PDVSA's bond debt interchangeably with Venezuela's bond debt in an eventual restructuring.  Venezuela's "policies that will guide" the Guaidó government and the National Assembly in "renegotiation of foreign-currency-denominated private claims" indicate that "no different treatment shall be accorded . . . as a result of . . . the identity of the public sector obligor," whether it is Venezuela or PDVSA.  First Sun Decl., Ex. 81; Second Sun Decl., Ex. 21, ¶ 19.

***Factor 4: Whether the government is the real beneficiary of the entity's conduct***

- Venezuela remains the real beneficiary of PDVSA's conduct, as evidenced by the *ad hoc* board's regular Twitter messages, through the account "@PDVSA_AdHoc," in support of the Guaidó government, which refer to PDVSA's assets as assets of Venezuela.  First Sun Decl., Exs. 82 ("The ad hoc PDVSA Board continues to work actively to recover Venezuela's assets abroad...."), 83 ("The new CITGO Board of Directors cooperates with North American courts to safeguard the assets of Venezuela and determine responsibility."), 84.

- Following Guaidó's rise as Interim President, his government regularly characterizes assets of PDVSA and CITGO as assets of the State.  First Sun Decl., Ex. 27 at 4 (Guaidó characterizing the appointment of an *ad hoc* board as part of "taking progressive and orderly control of the assets of our Republic abroad" in order to "speed up the political transition"); Ex. 90 (statement by Venezuela's ambassador to the U.S. posted on the National Assembly website describing U.S. Treasury regulations that shield against attachment of CITGO assets as a diplomatic "achievement of the interim government of President Juan Guaidó to permanently secure the assets of the Venezuelan state"); Second Sun Decl., Ex. 10 (describing Guaido's goal with the appointments of the *ad hoc* board as "recover[ing] and protect[ing] the nation's assets abroad").

- The *ad hoc* board's public representations regularly confirm its subservience to the Venezuelan State.  For example, in legal proceedings, the *ad hoc* board admitted that "[t]here is no dispute that PDVSA . . . [is] 'attached' to (and thus controlled by) Venezuela's Ministry of Petroleum and Mining" and no dispute that it forms "part of the National Public Administration of the Venezuelan Republic."  Second Sun Decl., Ex. 7 at 30 n.84. It has further confirmed that it plays a constitutional role to the State "[f]or reasons of economic and political sovereignty and national strategy."  *Id*. at 31.

***Factor 5: Whether adherence to separate identities would entitle the foreign state to benefits in U.S. courts while avoiding its obligations***

- Adherence to separate identities would allow Venezuela to obtain benefits in U.S. courts while avoiding its obligations because, as the Third Circuit stated, Venezuela owes [plaintiff] from a judgment that has been affirmed in our courts. Any outcome where [the U.S. judgment creditor] is not paid means that Venezuela has avoided its obligations." *Crystallex II*, 932 F.3d at 149.  Plainly, to allow Venezuela to enjoy the benefit of PDVSA's assets while simultaneously avoiding obligations to its creditors would be a gross injustice.

Accordingly, even if this Court considers only the acts of the Guaidó Government, it should

determine that Venezuela extensively controls PDVSA within the meaning of *Bancec*.

#### 4.    Alternatively, the Time Pertinent To the *Bancec* Extensive-Control Inquiry Is the Time of Plaintiff's Underlying Injury

Although Rusoro acknowledges that this Court held otherwise in *Crystallex*, Rusoro

maintains that the "pertinent" time for the purposes of determining alter ego liability is the date of the injury.[11]   Indeed, numerous cases support Rusoro's alternative argument.  For example, in *Bridas v. Turkmenistan*, the Fifth Circuit applied the *Bancec* control test in determining whether to impute liability under an arbitration award against Turkmenneft, a state-owned oil and gas company, to the government of Turkmenistan.  *Bridas*, 447 F.3d at 417-20.  In analyzing whether alter ego liability had been established under *Bancec*, the court considered facts from the time of injury.  *Id.* at 420 (noting that "despite some indicia of separateness, the reality was that when the Government's export ban forced Bridas out of the joint venture, the Government then exercised its power as a parent entity to deprive Bridas of a contractual remedy"); *see also* D.I. 4-1 at 27-28 (collecting cases).  This Court should apply the same rule regarding the "pertinent" time here.

### C.     Federal Law Governs the Alter Ego Analysis

Once again "incorporating by reference" arguments made in other proceedings, PDVSA asserts that even if Rusoro satisfies the *Bancec* test, the Execution Motion "must be denied because Delaware law … precludes the issuance of a writ seeking to attach and execute upon PDVSA's shares in PDVH."  D.I. 33 at 17.  However, PDVSA's argument that under Delaware law, Rusoro must show that Venezuela and PDVSA engaged in fraud, *id.* at 18, contravenes well-established case law, including decisions by this Court and the Third Circuit in the *Crystallex* cases.

The substantive law governing the immunity, alter ego, and attachment issues raised in the Execution Motion is federal, not state, law.  Rule 69(a)(1) of the Federal Rules of Civil Procedure provides that "[t]he *procedure on execution* … must accord with the *procedure* of the state where the court is located."  FED. R. CIV. P. 69(a)(1) (emphasis added).  Rule 69 by its terms "incorporates

---

[11]     Rusoro recognizes that its argument that Venezuela is collaterally estopped from arguing that PDVSA is not an alter ego of Venezuela is inconsistent with this Court's decision in *Crystallex*, 2019 WL 6785504, at *8.  However, Rusoro maintains this argument to preserve it for further review.

only local procedure," *Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 480 n.18 (D.C. Cir. 2016), whereas the "substantive" law is governed by ordinary choice of law rules, *Crestwood Capital Corp. v. Andes Indus. Inc.*, 2019 WL 6726293, at *1 (D. Ariz. Dec. 11, 2019).

Here, Rusoro has moved for a conditional writ of attachment under 10 Del. C. § 5031 and 8 Del. C. § 324, which provide the procedure for attaching a debtor's shares in a Delaware corporation to satisfy a debt. The substantive law governing Rusoro's motion, however, is federal law. In *Bancec*, the issue before the Supreme Court was "which body of law determines the effect to be given to Bancec's separate juridical status." *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983). The Supreme Court explained that the corporate relationship between a foreign state and its instrumentalities is governed by "principles … common to both international law and federal common law." *Id.* at 623. The Court expressly held that the FSIA was *not* governed by the "the law of the forum State," explaining that particularly in the context of analyzing the "attribution of liability among entities of a foreign state"—the precise issue before the Court here—such issues "should not be left to divergent and perhaps parochial state interpretations." 462 U.S. at 622 n.11 (citation omitted).[12]

This Court reached the same conclusion in *Crystallex I*, ruling that "federal law, not state law," governs the alter ego analysis, and PDVSA's "state-law alter ego standards" are "unpersuasive" because "neither [Venezuela nor PDVSA] is a Delaware corporation." 333 F. Supp. 3d at 396 n.31, 405. As this Court held, for purposes of analyzing the Court's jurisdiction and the merits of the attachment motion, "alter ego may be shown by *either* extensive control" *or*

---

[12]   Other courts have interpreted *Bancec* as establishing the rule that "international law and federal common law determine . . . when instrumentalities should not be treated as distinct from the sovereign." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 448 (D.C. Cir. 1990); *see also Jarvey v. Libyan Inv. Auth.*, 840 F.3d 248, 264 (5th Cir. 2016) (a claim to "overcom[e] the presumption that [a foreign state] instrumentality . . . is separate from the foreign state" is analyzed "with reference to federal law, not foreign law or state law").

"fraud or injustice." *Id*. at 397, 406, 415 (emphasis added).  The Third Circuit affirmed, determining that "federal common law" allows alter ego liability based solely on "extensive control" without proof of fraud.  *Crystallex II*, 932 F.3d at 132, 145.  As the Third Circuit made clear, the *Bancec* test is not limited to the issue of whether the Court has jurisdiction under the FSIA.  Instead, "*Bancec* can . . . be used to reach the assets of a foreign sovereign's extensively controlled instrumentality through post-judgment attachment proceedings," and thus "determine[s] 'whether the [instrumentality's] assets . . . are subject to execution'" and whether this Court has "power to issue a writ."  *Id*. at 139.

### D.     OFAC Sanctions Do Not Bar Adjudication of the Execution Motion

PDVSA's argument that OFAC sanctions prohibit the issuance of a conditional writ of attachment, D.I. 33 at 18-19, is foreclosed by this Court's prior decision.  In the Court's decision in *OI European Grp. B.V. v. Bolivarian Rep. of Venezuela*, 19-mc-290 (D. Del. Mar. 2, 2022), D.I. 109 (the "March 2022 Opinion"), the Court held that the relief requested by other creditors of Venezuela or PDVSA—*i.e.*, an order authorizing the issuance of a writ of attachment *fieri facias* and for service on PDVSA conditioned upon the Court's receipt of evidence that OFAC has authorized issuance or service or otherwise lifted the sanctions currently in place—the same relief requested in the Execution Motion, fully complies with OFAC regulations.  This Court examined at length each of the applicable executive orders and OFAC regulations, and categorically rejected PDVSA's argument that those orders and regulations prevented the Court from issuing the relief requested by the parties.  March 2022 Opinion at 12-18.  The Court thus held that "nothing prevents the Court from authorizing the eventual issuance of a writ of attachment."  *Id*. at 12; *see also Nat'l Oil Corp. v. Libyan Sun Oil Co.*, 733 F. Supp. 800, 809-12 (D. Del. 1990) (holding that "blocking regulations bar only those judicial proceedings that effect a transfer of foreign property or property interests" and "the President's statutory authority is limited to regulating those judicial processes

17

that would effect a transfer of foreign property or property interests").

### E.      The Execution Motion Is Justiciable

PDVSA further asserts that the Execution Motion is not justiciable under Article III of the Constitution, despite acknowledging that this Court has squarely rejected precisely the same justiciability argument in its March 2022 Opinion.  PDVSA advances two arguments in this regard: first, that Rusoro's attachment motion is not ripe because it is contingent on future events such as the issuance of an OFAC license, and second, that Rusoro cannot satisfy the redressability requirement under the Supreme Court's test for standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) absent a specific OFAC license or removal of sanctions.  D.I. 33 at 20. As this Court previously held, neither of PDVSA's arguments has merit.

### 1.      The Execution Motion Is Ripe For this Court's Review

In analyzing the ripeness of motions filed by other creditors—which PDVSA has described as raising issues that "overlap substantially with, or are identical to" those in the Execution Motion, this Court applied the Supreme Court's "flexible" ripeness test that considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." March 2022 Opinion at 8-9 & n.7 (citation omitted).  With respect to the hardship prong, the Court found that because OFAC may decide not to provide any guidance at all, declining to adjudicate the motions would leave creditors in "legal limbo," forcing them to wait even longer to enforce the substantial judgments they hold.  D.I. 33 at 9.  In finding that the fitness prong similarly favors ripeness, the Court rejected PDVSA's assertion that the motions were not ripe because they raised issues that were contingent on future events that were "speculative," explaining that "PDVSA's argument conflates whether a dispute is contingent with whether the requested relief involves some kind of contingency."  March 2022 Opinion at 11.  For the same reasons the Court held that the other creditors' substantially similar motions were ripe for review, so too is the Execution Motion.

### 2.   Rusoro Has a Redressable Injury

PDVSA further asserts that Rusoro has not satisfied the redressability requirement to establish standing.  D.I. 33 at 20.  PDVSA has not articulated the basis for this contention, but appears to suggest that Rusoro has not shown that its injury is redressable because an order authorizing an attachment would be contingent upon receipt of a specific OFAC license or the removal of sanctions, and "there is no guarantee" that OFAC will take either of those actions.  *Id.*

PDVSA's redressability argument, to the extent it raises one, mischaracterizes the question before the Court.  The Execution Motion seeks a ruling by this Court that the PDVH shares located in this District may be attached to satisfy the Judgment.  Therefore, the justiciable question, as articulated by PDVSA itself, is the following: "Is PDVSA the alter ego of the Republic under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983)?"  D.I. 33 at 2.  If the answer is yes, then PDVSA's assets are subject to attachment.  Whether the PDVH shares can eventually be levied upon and/or sold is a separate question that has no bearing on the specific relief requested by Rusoro.  The Court made clear that this issue is justiciable, having held that "no OFAC license is required before [the Court] may issue findings of fact regarding whether PDVSA is the Republic's alter ego," and the sanctions regime "does not require a specific license before the Court may enter an order authorizing the eventual issuance of a writ of attachment."  March 2022 Opinion at 17-18.  Therefore, Rusoro's injury is redressable by a favorable alter ego determination, which is necessary for Rusoro to enforce against the PDVH shares.

### F.   OFAC Sanctions Do Not Require Vacatur of the Judgment

PDVSA also argues that the executive orders and OFAC regulations relating to the Venezuelan sanctions regime require Rusoro to obtain an OFAC license before registering the Judgment in this District, and because Rusoro does not have a specific OFAC license, the Judgment should be vacated.  D.I. 33 at 19.  PDVSA's argument has been twice rejected by this

Court in connection with similar attachment motions by other creditors.

Putting aside the significant separation of powers concerns that would be implicated by a reading of Executive Branch orders and regulations that would nullify duly rendered federal court judgments, PDVSA's position ignores the fact that registration of the Judgment does not itself have any effect on property that is the subject of OFAC sanctions.  As this Court explained in the March 2022 Opinion, "[s]eparate and apart from any motion for a writ of attachment, ConocoPhillips' registration of its judgment in this Court is not connected to any specific blocked property," and "[b]ecause registering a judgment in this Court has no effect on any blocked property, the OFAC regulations are not implicated."  March 2022 Opinion at 19.

Moreover, to the extent PDVSA further contends that the Judgment is "null and void" under 31 C.F.R. § 591.202 because registration of the Judgment "automatically creates a prohibited judgment lien on any real property that the judgment debtor owns or may acquire in Delaware," D.I. 33 at 19, the Court has already disposed of this argument.  As the Court noted in *Red Tree*, and as is the case here, PDVSA has identified no real property that it owns in Delaware.  *Red Tree Investments, LLC v. Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*, 22-mc-68-LPS (D. Del. Apr. 28, 2022), D.I. 15, at 5.  But more importantly, the Court explained that "even if the registered judgments have created a lien on unidentified real property (or would create a lien on real property acquired in the future), the OFAC regulations would (at most) render null and void the *liens* (*i.e.*, the prohibited 'transfer'); they would not nullify or void the *judgments*."  *Id*. at 6.

## II.    CONCLUSION

For the foregoing reasons, this Court should deny PDVSA's Cross-Motion in its entirety, and further grant Rusoro's motion for an order: (i) finding that PDVSA is the alter ego of Venezuela; and (ii) authorizing the issuance and service of a conditional writ of attachment *fieri facias* to PDVH against its shares.

Dated: Wilmington, Delaware
       November 14, 2022

                    Respectfully submitted,

                    */s/ R. Craig Martin*
                    R. Craig Martin (DE Bar No. 005032)

                    DLA Piper LLP (US)
                    1201 North Market Street
                    Suite 2100
                    Wilmington, DE 19801
                    Tel: (302) 468-5655
                    Fax: (302) 778-7834
                    Craig.Martin@us.dlapiper.com

                    James E. Berger
                    Charlene C. Sun
                    Joshua S. Wan
                    Charlotte M. Westbrook

                    DLA Piper LLP (US)
                    1251 Avenue of the Americas
                    New York, NY 10020
                    Tel: (212) 335-4715
                    Fax: (212) 884-8715
                    James.Berger@us.dlapiper.com
                    Charlene.Sun@us.dlapiper.com
                    Joshua.Wan@us.dlapiper.com
                    Charlotte.Westbrook@us.dlapiper.com

                    *Attorneys for Plaintiff*