IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RUSORO MINING LIMITED, | : : : : | |
| *Plaintiff*, | : : | |
| v. | : : | C.A. No. 1:21-mc-00481-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : : : : | |
| *Defendant*. | : : : | |

**RESPONSE OF INTERVENOR PETRÓLEOS DE VENEZUELA, S.A. TO PROPOSED FINDINGS OF FACT OF PLAINTIFF RUSORO MINING LIMITED**

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

November 17, 2022

HEYMAN ENERIO GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law

*Attorneys for Intervenor*
*Petróleos de Venezuela, S.A.*

Intervenor PDVSA[1] submits this Response to Plaintiff's Proposed Findings of Fact ("Rusoro Proposal") (D.I. 35). PDVSA hereby incorporates by reference the reservation of rights in PDVSA's Proposed Findings of Fact ("PDVSA Proposal"), including PDVSA's reservations concerning the burden of proof and its immunities under the FSIA. (D.I. 34.) PDVSA objects to certain of Rusoro's proposed findings of fact on the grounds that, for the most part, they are not statements of fact and are, instead, legal conclusions. Any failure to address any allegations in the Rusoro Proposal shall not be construed as an admission of any such allegations. Notwithstanding the foregoing, PDVSA responds to the Rusoro Proposal as follows:

1. Rusoro continues to rely on actions taken by the illegitimate Maduro regime and its agents with respect to PDVSA before and after the United States recognized the Interim Government in January 2019. Rusoro Proposal ¶¶ 9-10, 16-53, 58. However, none of those proposed findings of fact are relevant to assessing the Republic's relationship with PDVSA during the pertinent time period.

2. The pre-recognition actions of the Maduro regime are irrelevant because they do not prove the existence of an alter ego relationship at the pertinent time, *i.e.*, the time between the filing of the Attachment Motion and the issuance and service of any writ. *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *18 (D. Del. Jan. 14, 2021); PDVSA Br. at 12-15, D.I. 33. The relationship between the Republic and PDVSA has materially changed since the United States recognized the Interim Government—an event that occurred well before Rusoro filed its Attachment Motion in February 2022. Since January 2019, the Interim Government has been the only government with the power to exercise the Republic's shareholder rights over PDVSA including the appointment of the *ad hoc* Board,

---

[1] Unless otherwise defined herein, capitalized terms are defined in the PDVSA Proposal.

which in turn is the only entity with the power to exercise PDVSA's shareholder rights over PDVH. *Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *21-22, *33 (Del. Ch. Aug. 2, 2019), *aff'd* 237 A.3d 68 (Del. 2020).

3. The post-recognition actions of the illegitimate Maduro regime are irrelevant because it no longer has any interest in or exercises any control over the "relevant portion of PDVSA, which is the property in the U.S." *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167, at *20 (D. Del. Dec. 12, 2019); *see also* PDVSA Br. at 15, D.I. 33. Rusoro has not established any facts linking the Maduro regime to the PDVSA *ad hoc* Board or PDVSA's U.S. Subsidiaries. Moreover, as a matter of law, the actions of the illegitimate Maduro regime in Venezuela or elsewhere cannot be recognized as actions of the Republic for purposes of deciding ownership of property located in the U.S., including the PDVH shares, because that would contravene the United States' recognition of the Interim Government and derecognition of the Maduro regime.[2] *See United States v. Pink*, 315 U.S. 203, 229 (1942); *United States v. Belmont*, 301 U.S. 324, 328-30 (1937); *see also Nat'l Union Fire Ins. Co. v. Republic of China*, 254 F.2d 177, 186 (4th Cir. 1958); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944); *see also* PDVSA Br. at 15-16, D.I. 33. In short, as demonstrated in PDVSA's prior submissions, the only relevant relationship for purposes of ascertaining ownership of the PDVH shares at this time is the one that exists between the Interim Government and the *ad hoc* Board, the only entity that holds title to the PDVH shares. PDVSA Br. at 12-16, D.I. 33.

4. While Rusoro acknowledges that the U.S. Government has recognized the Interim Government, Rusoro nevertheless asserts that the U.S. Government continues to recognize the

---

[2] Any contrary views by foreign nations or international bodies have no bearing on the legal effects of the United States' recognition of the Interim Government as a matter of U.S. law. *See* Rusoro Proposed Findings ¶ 10.

-2-

illegitimate Maduro regime as the *de jure* and *de facto* Venezuelan government. Rusoro Proposal ¶ 9. That is false. The U.S. Government has expressly declared its nonrecognition of the Maduro regime, stating: "The United States does not recognize the Maduro regime as the government of Venezuela" and that "the United States does not consider former president Nicolas Maduro to have the legal authority" to act on behalf of the Republic. Meehan Decl., Ex. 3. The Executive has also "refused to recognize Maduro as Venezuela's head of state." Meehan Decl., Ex. 2, at 2. Furthermore, as a matter of law, the U.S. Government's recognition of the Interim Government had the effect of derecognizing the Maduro regime. *See Jiménez*, 2019 Del. Ch. LEXIS 288, at *34; *see also Nat'l Petrochemical Co. v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988).

5. Rusoro asserts that certain provisions in the Venezuelan Constitution and PDVSA's corporate documents demonstrate the Republic's extensive control over PDVSA. Rusoro Proposal ¶¶ 11-15. While Rusoro relies heavily on Prof. Gómez's expert testimony, his unrebutted testimony is that these Constitutional provisions and other legal documents were part of a legal framework that existed from the time of PDVSA's creation that "ensure[d] a proper separation between PDVSA … and Venezuela." Gómez Reply ¶ 24; Gómez Test., Hrg. Tr. 51:22-53:9. In fact, the unrebutted testimony of every Venezuelan legal expert is that, until approximately 2003, PDVSA was an independent economically-driven company that operated autonomously from the Republic without political interference. Gómez Report ¶ 10; Brewer-Carías Decl. ¶ 23; *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez. ("Crystallex I"),* 333 F. Supp. 3d 380, 412 (D. Del. 2018) (discussing the Declaration of Dr. Roberto Rigobon submitted by Crystallex).

6. Rusoro alleges that the regulatory framework enacted by the Interim Government, including the Transition Statute, Presidential Decree No. 3 and the resolution passed by the Venezuelan National Assembly in April 2019 (the "April 2019 Resolution" and collectively, the

"Regulations"), give the Interim Government "unfettered authority to exercise considerable control over PDVSA, PDV Holding and Citgo." Rusoro Proposal ¶ 55(a). To support that allegation, Rusoro asserts the following:

    a. The Transition Statute provides for the Interim Government to exercise the Republic's rights as PDVSA's shareholder to appoint the members of PDVSA's *ad hoc* Board. *Id.* ¶ 54.

    b. The Regulations provide that PDVSA's *ad hoc* Board shall have the power to act as PDVSA's shareholder assembly and its board of directors and suspended all rights and powers of any persons appointed by the Maduro regime to serve as PDVSA's president or members of its board of directors or shareholders assembly. *Id.* ¶¶ 55(b).

    c. The Regulations suspended all rights and powers that the Ministry of Hydrocarbons had with respect to PDVSA. *Id.* ¶ 55(c).

The Regulations are designed to ensure that the Interim Government is able to exercise its rights as PDVSA's legitimate shareholder and to prevent the illegitimate Maduro regime from asserting any purported shareholder rights or otherwise interfering with PDVSA's *ad hoc* Board or its U.S. Subsidiaries. Brewer-Carías Decl. ¶¶ 28-43. The Regulations also reflect the exercise of ordinary and legitimate regulatory power. In fact, the U.S. Government has enacted similar regulations through the OFAC sanctions program that prohibit U.S. persons from dealing with the Maduro regime. Nothing in the Regulations shows that the Interim Government exercises day-to-day control over the operations of PDVSA's *ad hoc* Board or its U.S. Subsidiaries.

    7. Contrary to Rusoro's assertions, the Regulations show that the Interim Government has taken steps to restore PDVSA's independence from the Republic:

    a. The Regulations provide for PDVSA's *ad hoc* Board and its U.S. Subsidiaries to operate autonomously and free from political interference from the Interim Government. Brewer-Carías Decl. ¶¶ 34-35, 40-42.

    b. The Regulations require PDVSA's *ad hoc* Board and its U.S. Subsidiaries to follow to make their own independent business decisions based on commercial efficiency criteria. Brewer-Carías Decl. ¶ 35, 40-42.

c. While this Court previously found that the prior Chávez and Maduro regimes used Venezuela's Ministry of Hydrocarbons to control PDVSA's operations, *Crystallex I,* 333 F. Supp. 3d at 408, the Regulations have stripped the Ministry of Hydrocarbons of its rights and powers. Brewer-Carías Decl. ¶¶ 37-39.

8. Rusoro's alleges that the Interim Government appointed the members of PDVSA's *ad hoc* Board. Rusoro Proposal ¶ 54. But that does not demonstrate any failure to observe corporate formalities or any control over PDVSA's day to day operations. The Interim Government is PDVSA's sole legitimate shareholder and therefore, like any corporate shareholder, it has the right to appoint the corporation's directors. Furthermore, it is undisputed that PDVSA's *ad hoc* Board is composed of international petroleum industry professionals and there are no government officials on the *ad hoc* Board. Medina Decl. ¶¶ 5, 11(e); Pacheco Decl. ¶ 12(e). The PDVSA *ad hoc* Board is thus significantly more independent from the Republic than the boards appointed by the Chávez and Maduro regimes. *See Crystallex I,* 333 F. Supp. 3d at 407.

9. Rusoro alleges that the Interim Government has removed and appointed the directors of PDVSA's U.S. Subsidiaries. Rusoro Proposal ¶ 56(b). However, the unrebutted evidence establishes that, since February 2019, PDVSA's *ad hoc* Board has exercised PDVSA's shareholder rights to appoint PDVH's directors, PDVH's directors have, in turn, exercised PDVH's shareholder rights to appoint CITGO Holding's directors, and CITGO Holding's directors have, in turn, exercised CITGO Holding's shareholder rights to appoint CITGO Petroleum's directors. Medina Decl. ¶ 4(d); *Jiménez*, 2019 Del. Ch. LEXIS 288, at *13.

10. Rusoro alleges that PDVSA is required to obtain approval from the Interim Government for every contract. Rusoro Proposal ¶ 55(d). To the contrary, the unrebutted evidence shows that PDVSA's *ad hoc* Board and its U.S. Subsidiaries operate autonomously and make independent business decisions without any directives from the Interim Government. Medina Decl. ¶¶ 7, 11; Pacheco Decl. ¶¶ 12. Unlike the Chávez and Maduro regimes, *Crystallex I,* 333 F. Supp.

3d at 407-10, the Interim Government does not dictate the terms of PDVSA's commercial transactions or otherwise impose obligations on PDVSA. Medina Decl. ¶¶ 4, 6-7, 11-12; Pacheco ¶ 7, 12.

11. There is no evidence that the Interim Government approves all of PDVSA's contracts or interferes in PDVSA's day to day operations. The Venezuelan Constitution does provide for the National Assembly to review and approve a specific category of contracts – i.e. national interest contracts – to ensure that those contracts are consistent with Venezuelan law and in the best interests of the Venezuelan people. National interest contracts can include contracts entered into by PDVSA where such contracts implicate the national public interest. But these Constitutional provisions and related statutes were in place prior to 2003 and were part of the legal framework that existed during the period before 2003 when it is undisputed that PDVSA operated as an autonomous, commercial-minded corporation that was separate and independent from the Republic. Gómez Test., Hrg. Tr. 51:22-53:9; Gómez Report ¶ 10. Furthermore, the unrebutted evidence demonstrates that the National Assembly merely reviews such contracts to ensure that they comply with constitutional and other legal requirements and does not dictate the commercial terms of PDVSA's contracts. Medina Test., Hrg. Tr. 86:14-21, 95:5-16, 114:1-9. The National Assembly's regulatory role in reviewing national public interest contracts does not demonstrate day to day control over PDVSA's operations.

12. Rusoro asserts that the Interim Government has used PDVSA funds to pay the Republic's legal fees. Rusoro Proposal ¶ 60. Because creditors of the Republic have commenced legal proceedings in the U.S. to attach and execute upon PDVSA's assets to satisfy debts of the Republic, PDVSA's *ad hoc* Board authorized the lending of funds to pay some of the Republic's legal expenses incurred in defending those proceedings and thus protecting PDVSA's assets. The

*ad hoc* Board determined that such use of PDVSA funds was appropriate because those funds were spent towards the protection of PDVSA's assets and because there was an agreement that the Republic would repay those funds. Medina Decl. ¶ 17. Such loans do not indicate any failure to observe corporate formalities or day to day control over PDVSA.

13. Rusoro asserts that the Interim Government draws money directly from PDVSA's U.S. Subsidiaries. Rusoro Proposal ¶ 57. Rusoro relies exclusively on unsourced hearsay statements in media reports that do not substantiate its allegations. Furthermore, the unrebutted testimony of the Chairman of PDVSA's *ad hoc* Board, Horatio Medina, is that PDVSA and its U.S. Subsidiaries have their own separate sources of funding, and that the Interim Government does not draw funds directly from PDVSA or its U.S. Subsidiaries. Medina Decl. ¶ 19.

14. Rusoro relies on the Interim Government's expressed desire for a global restructuring of Venezuela's and PDVSA's debts as evidence that the Interim Government does not distinguish between the assets and liabilities of PDVSA and those of the Republic. Rusoro Proposal ¶ 25. Those statements say nothing about how such a restructuring will be accomplished but only that eligible claims shall have a right to "renegotiation on equal terms" and that "no different treatment shall be accorded" to eligible claims based on the origin of the claim, the domicile of the claimholder or the identity of the public sector obligor. D.I. 3-6. Furthermore, Mr. Medina's unrebutted testimony is that the desire for an orderly global restructuring stems from the reality that creditors of the Republic, such as Huntington Ingalls, are seeking to blur the lines between PDVSA and the Republic by seeking to attach PDVSA's assets to satisfy the Republic's obligations. Medina Decl. ¶ 15. In any event, no such restructuring has occurred.

15. Rusoro asserts that the *ad hoc* Board has referred to PDVSA's assets as Venezuelan assets. Rusoro Proposal ¶¶ 59, 61. However, such soundbites do not demonstrate any failure to observe corporate formalities or otherwise demonstrate that the Interim Government exercises day to day control over PDVSA or its U.S. Subsidiaries. Those soundbites reflect communications to the Venezuelan people who view PDVSA and its direct and indirect U.S. Subsidiaries as important to the Venezuelan oil industry and that any loss of these companies would have an indirect negative impact on the Republic as the ultimate parent. Medina Decl. ¶ 14; Medina Test., Hrg. Tr. 109:6-18.

16. While Rusoro asserts that the OFAC sanctions define "Government of Venezuela" to include PDVSA, those sanctions do not demonstrate that the U.S. Government views PDVSA and the Republic as one and the same. Rusoro Proposal ¶ 9(b). To the contrary, OFAC recognized the distinction between the Republic and PDVSA by blocking the assets of PDVSA and the Republic under separate executive orders issued at different times. *See* Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019); Exec. Order No. 13850, 83 Fed. Reg. 55243 (Nov. 1, 2018). Furthermore, the U.S. Government has expressly stated that it does not believe that an alter ego relationship exists in light of the changes made by the Interim Government. Meehan Decl., Ex. 8, at 8.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Joseph D. Pizzurro<br>Kevin A. Meehan<br>Juan O. Perla<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Avenue<br>New York, NY 10178<br>(212) 696-6000<br>jpizzurro@curtis.com<br>kmeehan@curtis.com<br>jperla@curtis.com<br><br>Dated: November 17, 2022 | HEYMAN ENERIO GATTUSO & HIRZEL LLP<br><br>*/s/ Samuel T. Hirzel, II*<br>Samuel T. Hirzel, II (#4415)<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>SHirzel@hegh.law<br><br>*Attorneys for Intervenor Petróleos de Venezuela, S.A.* |