## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

RUSORO MINING LIMITED,

      Plaintiff,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

      Defendant.

Case No. 21-mc-00481-LPS

## RUSORO MINING LIMITED'S ANSWERING BRIEF
## ON THE ISSUES IN THE COURT'S MAY 10 ORDER

R. Craig Martin (DE Bar No. 005032)

DLA Piper LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE 19801
Tel: (302) 468-5655
Fax: (302) 778-7834
*Craig.Martin@us.dlapiper.com*

James E. Berger (*pro hac vice*)
Charlene C. Sun (*pro hac vice*)
John Canoni
Joshua S. Wan
Charlotte M. Westbrook

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4715
Fax: (212) 884-8715
*James.Berger@us.dlapiper.com*
*Charlene.Sun@us.dlapiper.com*
*John.Canoni@us.dlapiper.com*
*Joshua.Wan@us.dlapiper.com*
*Charlotte.Westbrook@us.dlapiper.com*

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    ARGUMENT ........................................................................................................... 1

      A.    Delaware Law Does Not Prevent this Court from Designating Rusoro's Judgment as an "Additional Judgment".................................................. 2

      B.    The Venezuela Parties Have Waived Their New Delaware Law Challenge to the Validity of Rusoro's Writ of Attachment .................................... 5

      C.    The Venezuela Parties Are Collaterally Estopped from Raising Their New Delaware Law Argument .................................................................. 6

      D.    The OFAC License Permits this Court to Authorize Unconditional Writs of Attachment........................................................................................... 7

II.    CONCLUSION...................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Ins. Co. v. Hallock*,
  73 U.S. 556 (1867).................................................................................................2

*Baker v. Gotz*,
  387 F. Supp. 1381 (D. Del. 1975).........................................................................5

*Bartlett v. Gen. Motors Corp.*,
  127 A.2d 470 (Del. Ch. 1956)...............................................................................4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. CV 17-MC-151-LPS, 2021 WL 129803 (D. Del. Jan. 14, 2021) ..............5, 6, 7

*Delaware v. BP Am. Inc.*,
  578 F. Supp. 3d 618 (D. Del. 2022).......................................................................6

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela ("OIEG I")*,
  No. MC 19-290-LPS, 2022 WL 611563 (D. Del. Mar. 2, 2022)...........................3

**Statutes**

6 Del. C. § 8-112(e) ......................................................................................................4

8 Del. C. § 324 ...........................................................................................................2, 4

8 Del. C. § 168(a) .........................................................................................................4

**Other Authorities**

Del. Ch. Ct. R. 70.........................................................................................................4

Fed. R. Civ. P. 70.........................................................................................................4

Plaintiff and judgment creditor Rusoro Mining Limited ("Rusoro") respectfully submits this response to the opening brief filed by the Bolivarian Republic of Venezuela ("Venezuela"), Petróleos de Venezuela, S.A. ("PDVSA"), and PDV Holding, Inc. ("PDVH") (together, the "Venezuela Parties")[1] on the issues set forth in this Court's May 10, 2023 Order (D.I. 59).

## I.     ARGUMENT

For the reasons discussed below, nothing in the Sale Procedures Order[2] or Delaware law—including the Venezuela Parties' untimely new Delaware law challenge to Rusoro's writ of attachment—prevents this Court from designating Rusoro's judgment an "Additional Judgment" under the Sale Procedures Order and authorizing the issuance and service of an unconditional writ of attachment.  Accordingly, Rusoro's Judgment should be added forthwith as an "Additional Judgment" within the meaning of the Sale Procedures Order.  Furthermore, upon the lifting of the temporary stay by the Third Circuit, this Court should issue full, unconditional writs of attachment to Rusoro and any other creditor who currently holds a conditional writ of attachment, and direct service of those writs in accordance with the order of priority proposed in Rusoro's opening brief.[3]

---

[1]    The Venezuela Parties filed their opening brief on the issues set forth in the Court's May 10, 2023 Order in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela ("Crystallex")*, Case No. 17-mc-151-LPS, D.I. 571 ("Venezuela Parties' Br.").

[2]    Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Case No. 17-mc-151-LPS, D.I. 481 (the "Sale Procedures Order").

[3]    Because the Venezuela Parties have "take[n] no position" on the relative priority of any additional judgments, Venezuela Parties' Br. at 15, this response addresses the issues of: (a) "which, if any, judgments should be regarded as 'Additional Judgments' under the Sale Procedures Order entered in the Crystallex Action," and (b) "should the Court issue full, unconditional orders of attachments (including by converting conditional grants) to any creditors," and "[i]f yes, should the Court direct service of any such orders of attachment"?

### A.      Delaware Law Does Not Prevent this Court from Designating Rusoro's Judgment as an "Additional Judgment"

The Venezuela Parties do not dispute that the Sale Procedures Order does not define the requirements for designating which judgments should be included in the sale process in *Crystallex*. Instead, the Sale Procedures Order simply states that "[b]y no later than ten calendar days after the Launch Date (the 'Additional Judgment Deadline'), the Court will decide in accordance with applicable law which, if any, additional judgments (the 'Additional Judgments,' and with the Crystallex Judgment, the 'Attached Judgments') are to be considered by the Special Master for purposes of the Sale Transaction."  Sale Procedures Order ¶ 30.

Despite the clear language of the Sale Procedures Order giving the Court broad discretion to determine which judgments may be designated Additional Judgments, the Venezuela Parties now seek to read into that order a new requirement under Delaware law—*i.e.*, that to be deemed to be a holder of an Additional Judgment, a creditor must first levy upon the physical share certificates of PDVH.  Venezuela Parties' Br. at 5.  Specifically, the Venezuela Parties assert that "Section 324 requires that any sale be limited to judgment creditors holding valid attachments," *id*. at 6, and that no other creditors may have their judgments designated as Additional Judgments because "no other creditors can currently obtain valid attachments against the PDVH shares, because the physical certificate is not in PDVH's possession and thus cannot be seized by the marshal through service of the writ on PDVH," *id*. at 5.

The Venezuela Parties' contention that the Court's designation of Additional Judgments must be tied to the ability of the putative Additional Judgment holders to levy upon the shares of PDVH finds no support in the text of the Proposed Sale Order.  Nor do the patchwork of cases relied on by the Venezuela Parties, merely restating the rule that property cannot be levied upon in the absence of a valid writ of attachment, support this argument.  *Id*. at 6-7 (citing *Aetna Ins.*

2

*Co. v. Hallock*, 73 U.S. 556, 559 (1867) ("[T]he ordinary writ of *fieri facias* is the authority of the sheriff to levy on property.")).

The Venezuela Parties instead rely heavily on a footnote in this Court's March 2, 2022 decision in *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela ("OIEG I")*, No. MC 19-290-LPS, 2022 WL 611563, at *9 & n.17 (D. Del. Mar. 2, 2022), as evidence that "this Court has always understood that a valid attachment is necessary for a creditor to have its judgment added to the sale process." Venezuela Parties' Br. at 7 (citing *OIEG I*, 2022 WL 611563, at *8-9 & n.17). The relevant footnote, however, says no such thing. Specifically, in *OIEG I*, the Court declined to add ConocoPhillips' judgment to the sale process "unless ConocoPhillips establishes a concrete interest in the PDVH Shares." *OIEG I*, 2022 WL 611563, at *9 & n.17. The Court did not, as the Venezuela Parties misleadingly assert, state that it would only add ConocoPhillips to the sale process "when 'a lien on' the PDVH shares 'is created under Delaware law.'" Venezuela Parties' Br. at 7. Rather, the Court tied ConocoPhillips' ability to establish "a concrete interest in the PDVH Shares" to "obtain[ing] a specific license from OFAC or the sanctions regime materially chang[ing]." *Id*. In fact, what the Court identified as the sole obstacle to adding ConocoPhillips to the sale process was the OFAC sanctions regime, **not**, as the Venezuela Parties argue, any impediment under Delaware law. As set forth in more detail in Section I.D below, such "material change" as was contemplated in footnote 17 of *OIEG I* has since occurred with OFAC's issuance of the specific license to this Court on May 1, 2023 (the "License").

Notwithstanding the Venezuela Parties' efforts to convince this Court that none of PDVSA's or Venezuela's creditors except for Crystallex can ever be deemed Additional Creditors as a result of PDVH's and PDVSA's removal of the shares to be attached from this jurisdiction, Delaware law simply does not permit such a result. Instead, both Delaware law and the Federal

Rules of Civil Procedure set forth a clear remedy to preserve the effectiveness of Rusoro's

attachment in the event PDVH is unable to produce its share certificate as it is required to do under

Section 324(b) upon service of the writ of attachment.  8 Del. C. § 324(b) ("Within 20 days after

service of the process, the corporation shall serve upon the plaintiff a certificate of the number of

shares held or owned by the debtor….").

>           Section 8-112(e) of Delaware's Uniform Commercial Code provides that

>> [a] creditor whose debtor is the owner of a certificated security is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security … or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.

6 Del. C. § 8-112(e).  Furthermore, under Federal Rule of Civil Procedure 70,

>> [i]f a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party.

Fed. R. Civ. P. 70(a); *see also* Del. Ch. Ct. R. 70 (setting forth substantially similar Court of

Chancery rule).  Section 168(a) of the Delaware Code further states that share certificates in

Delaware corporations may be reissued in the event of loss, theft, or destruction.  8 Del. C. § 168(a)

("[T]he owner of the lost, stolen or destroyed certificate or such owner's legal representatives may

apply to the Court of Chancery for an order requiring the corporation to show cause why it should

not issue new uncertificated shares or a new certificate of stock in place of the certificate so lost,

stolen or destroyed.").  Indeed, Delaware courts have recognized that courts have the power to

order a corporation to cancel a judgment debtor's shares and reissue new shares for a creditor's

benefit.  *See Bartlett v. Gen. Motors Corp.*, 127 A.2d 470, 473 (Del. Ch. 1956) ("If the statute [8

Del. C. § 324] is to accomplish its intended purpose, it must be construed in this case to require

the corporation to give the purchaser new certificates and to cancel the old registrations. Otherwise,

a sale under the statute would give the purchaser practically nothing. I cannot believe this result was intended.").[4]  Accordingly, under Delaware law and the Federal Rules of Civil Procedure, to the extent PDVH cannot produce its physical share certificate, the Court should direct PDVH to reissue and deliver the shares to the U.S. Marshal.

### B.    The Venezuela Parties Have Waived Their New Delaware Law Challenge to the Validity of Rusoro's Writ of Attachment

In any event, because PDVSA never raised its argument regarding the absence of the physical share certificate in its opposition to Rusoro's attachment motion, that argument is waived.

In *Crystallex*, this Court held that PDVSA's attempt to rely on Section 8-112(a) to challenge the validity of Crystallex's writ of attachment after the Court had already granted Crystallex's attachment motion was untimely.  The Court explained that to the extent "PDVSA thought that there were questions of Delaware law" about the validity of Crystallex's writ of attachment, "the time to raise them was when the Court was adjudicating Crystallex's motion for a writ and PDVSA's motion to dismiss."  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 17-MC-151-LPS, 2021 WL 129803, at *15 (D. Del. Jan. 14, 2021).  The Court added that "at minimum PDVSA needed to have put the Court on notice that, after the Court granted Crystallex's motion, PDVSA would still seek an opportunity to attack the validity of the writ on state law grounds."  *Id.* at *13.

In its opposition to Rusoro's attachment motion, PDVSA raised a challenge under Delaware law—*i.e.*, that "Delaware law permits issuance of a writ of attachment of shares

---

[4]    This Court's authority to fashion an equitable remedy to preserve the effectiveness of Rusoro's attachment in the event PDVH is unable to produce its share certificate is further bolstered by the longstanding case law that recognizes that independently of any statutory authority, a Delaware court in equity can sequester and sell property interests, including shares, for the payment of debts.  *See Baker v. Gotz*, 387 F. Supp. 1381, 1391 (D. Del. 1975), *aff'd*, 523 F.2d 1050 (3d Cir. 1975) ("The power of the Court of Chancery to sequester stock does not have its origin in section 324 but springs from the historic and inherent power of equity.").

registered in the name of a judgment debtor's alter ego only if the judgment debtor used the putative alter ego as 'a sham entity designed to defraud investors and creditors.'" D.I. 33 at 4-5. However, PDVSA never raised the argument that the Court could not issue the writ under Delaware law because it was not in possession of the physical share certificate. Therefore, PDVSA has waived this argument. *Crystallex*, 2021 WL 129803, at *15 (finding PDVSA's Delaware law argument untimely); *see also Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 627 (D. Del. 2022) ("When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived or abandoned.").

### C.     The Venezuela Parties Are Collaterally Estopped from Raising Their New Delaware Law Argument

PDVSA is also collaterally estopped from raising its new Delaware law challenge to the validity of Rusoro's writ of attachment. As this Court held, collateral estoppel applies where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Crystallex*, 2021 WL 129803, at *9 (quoting *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001)). The validity of Rusoro's writ of attachment was litigated in these proceedings in Rusoro's motion for a conditional writ of attachment and PDVSA's cross-motion to dismiss for lack of jurisdiction. As this Court explained in *Crystallex*, "[a]lthough collateral estoppel would apply even if this Court had decided the validity of the writ without any express reference to Delaware law, in fact both parties and the Court did allude to Delaware law in the earlier part of this litigation." *Id*. at *9 & n.7. The same is true here, as PDVSA opposed Rusoro's motion based on Delaware law. D.I. 33 at 4-5. PDVSA is therefore collaterally estopped from relitigating the validity of Rusoro's attachment by raising a completely new argument under Delaware law. *Crystallex*, 2021 WL 129803, at *9 ("That

6

PDVSA now raises new arguments in support of its old position does not defeat application of collateral estoppel.").

### D.     The OFAC License Permits this Court to Authorize Unconditional Writs of Attachment

As the Court made clear in its March 23, 2023 Order (D.I. 44), the only obstacle to the Court issuing a full, unconditional writ of attachment had been the OFAC sanctions regime, which forced the Court to condition the issuance and service of Rusoro's writ of attachment on the receipt of a license from OFAC expressly permitting the issuance and service of such writ.

This final remaining obstacle was definitively removed when this Court received a specific license from OFAC on May 1, 2023, permitting the Court to "engage in transactions and activities ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias* for any party named an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order related to [Crystallex]." D.I. 55 at 8. The License specifically stated that it did not cover the actual execution of the PDVH shares, noting that "[a] separate license is required in order for any party to execute any writ that has been issued." *Id*.

The Venezuela Parties' contention that "OFAC's non-enforcement policy concerning participation in the sale process does not extend to issuance of unconditional writs of attachment," Venezuela Parties' Br. at 2-3, is belied by OFAC's communication to the Court on May 1, 2023 clarifying that it granted the License specifically as a result of "the Order issued by the Court on March 23, 2023, authorizing the issuance and service of writs of attachment *fieri facias* granted by the Court to judgment creditors against shares of PDVH Holding, Inc. owned by Petróleos de Venezuela, S.A." D.I. 55 at 6. As the Special Master explained in the same string of e-mail correspondence with the Court, "essentially, the license is intended to allow the Court to have full control over who is/isn't added as an Additional Judgment Creditor. Such Additional Judgment

Creditors will be authorized to participate in the sale process under OFAC's non enforcement policy, up to the point of sale.  At that point, an additional license will be required under OFAC's 'favorable' licensing process."  *Id*. at 4.

Therefore, it is clear that under the License, OFAC has given the Court "full control" over the sale process up until the point of sale, including with respect to issuing full, unconditional writs of attachment.  The Court should therefore exercise its authority to convert Rusoro's conditional writ of attachment to a full, unconditional writ.

## II.    CONCLUSION

For the foregoing reasons, this Court should issue an order (1) deeming Rusoro's judgment an Additional Judgment under the Sale Procedures Order, (2) converting the Court's order of March 23, 2023 granting a conditional writ of attachment to Rusoro into a full, unconditional writ of attachment, and (3) fixing priority in the order set forth in Rusoro's opening brief (D.I. 60).

Dated:  Wilmington, Delaware
June 7, 2023

Respectfully submitted,

*/s/ R. Craig Martin*
R. Craig Martin (DE Bar No. 005032)

DLA Piper LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE 19801
Tel: (302) 468-5655
Fax: (302) 778-7834
Craig.Martin@us.dlapiper.com

James E. Berger (*pro hac vice*)
Charlene C. Sun (*pro hac vice*)
John Canoni
Joshua S. Wan
Charlotte M. Westbrook

DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4715
Fax: (212) 884-8715
James.Berger@us.dlapiper.com
Charlene.Sun@us.dlapiper.com
John.Canoni@us.dlapiper.com
Joshua.Wan@us.dlapiper.com
Charlotte.Westbrook@us.dlapiper.com

*Attorneys for Plaintiff*